## BOYER *v.* BOYER & Others, County Commissioners.

IN ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYL-
VANIA.

Submitted January 9, 1885.—Decided March 2, 1885.

The laws of Pennsylvania exempted from local taxation, for county purposes, railroad securities ; shares of stock held by stockholders in corporations which were liable to pay certain taxes to the State; mortgages; judgments; recognizances ; moneys due on contracts for sale of real estate ; and loans by corporations, which were taxable for State purposes, when the State tax should be paid. The pleadings in this case admitted, in detail, large amounts of exempted property under these heads in the State : *Held*, That, under these circumstances, this constituted a discrimination in favor

of other moneyed capital against capital invested in shares in national banks, which was inconsistent with the provision in § 5219 Rev. Stat., that the taxation by State authority of national bank shares shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State.

The previous decisions of this court respecting State and local taxation of shares in national banks considered and reviewed.

The former decisions of this court do not sustain the proposition that national bank shares may be subjected, under the authority of the State, to local taxation where a very material part, relatively, of other moneyed capital in the hands of individual citizens within the same jurisdiction or taxing district is exempted from such taxation.

While exact uniformity or equality of taxation cannot be expected under any system, capital invested in national bank shares was intended by Congress to be placed upon the same footing of substantial equality in respect of taxation by State authority as the State establishes for other moneyed capital in the hands of individual citizens, however invested, whether in State bank shares or otherwise.

Bill in equity commenced and tried in the State courts of Pennsylvania to prevent the collection of a tax levied under an assessment alleged to be in violation of the statutes of the United States. The facts which raise the federal question are stated in the opinion of the court.

*Mr. Charles W. Wells* for plaintiff in error.

*Mr. W. J. Whitehouse* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error brought this suit in a State court of Pennsylvania for an injunction restraining the commissioners of Schuylkill County from levying *a county tax* for the year 1883 upon certain shares in the Pennsylvania National Bank— an association organized under the National Banking Act. The suit proceeds upon the ground that such levy violates the act of Congress prescribing conditions upon State taxation of national bank shares, in this that "other moneyed capital in the hands of individual citizens" of that county is exempted, by the laws of Pennsylvania, from such taxation. A demurrer to the bill was sustained, and the suit was dismissed. Upon appeal to the Supreme Court of Pennsylvania that judgment

was affirmed, on the ground that the laws of the State, under which the defendants sought to justify the taxation, were not repugnant to the act of Congress.

State taxation of national bank shares was permitted by the act of Congress of June 3, 1864, 13 Stat. 111, ch. 106, § 41, subject to the restriction that it should not be at a greater rate than that imposed upon other moneyed capital in the hands of individual citizens of the same State. But that section contained a proviso to the effect " that the tax so imposed, under the laws of any State, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under the authority of the State where such association is located." The case of *Lionberger* v. *Rouse*, 9 Wall. 468, arose under that act. The question there was whether shares in a national bank were exempt from State taxation merely because two State banks of issue, organized before the national banking act was passed, and which held a very inconsiderable portion of the banking capital of the State, had by their charter the right to pay a certain per cent. on the amount of their capital stock in full of all State bonus and taxes—an amount less than that imposed upon national bank shares. The shares of other associations in the State, having the privileges of banking, except the power to emit bills, were taxed like the shares in national banks. It was held that Congress meant, by reference in the act of 1864 to taxation of State bank shares, to require, as a condition to taxation by the State of shares in national banks, that she should, unless restrained by valid contract, tax in like manner the shares of banks of issue of her own creation. There was no question in that case of discrimination against capital invested in national bank shares in favor of moneyed capital which was invested otherwise than in bank stock.

But the act of 1864 was so far modified by that of February 10, 1868, 15 Stat. 34, ch. 7, that the validity of such State taxation was thereafter to be determined by the inquiry, whether it was at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens, and not necessarily by a comparison with the particular rate imposed upon shares

in State banks. The effect, if not the object, of the latter act was to preclude the possibility of any such interpretation of the act of Congress as would justify States, while imposing the same taxation upon national bank shares as upon shares in State banks, from discriminating against national bank shares, in favor of moneyed capital not invested in State bank stock. At any rate, the acts of Congress do not now permit any such discrimination. § 5219 of the Revised Statutes is as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association, owned by non-residents of any State, shall be taxed in the city or county where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes to the same extent, according to its value, as other real property is taxed."

Whether the proposed taxation for *county* purposes of the plaintiff's shares of national bank stock is at a greater rate than is assessed, for like purposes, on other moneyed capital in the hands of individual citizens, is the single question upon which depends the affirmance or reversal of the judgment.

Before examining the statutes of Pennsylvania upon the subject of taxation, it will be well to ascertain how far the decisions of this court have fixed the true meaning of the words "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State."

The Supreme Court of Pennsylvania is of opinion that the commissioners are fully sustained by the decision in *Hepburn* v. *The School Directors*, 23 Wall. 480. In that case, the question was, whether the owner of national bank shares, re-

siding in Cumberland County, Pennsylvania, was exempt from a local tax by reason of a statutory exemption from all taxation in that county, except for State purposes, of "mortgages, judgments, recognizances, and money owing upon articles of agreement for the sale of real estate," except mortgages, judgments, and articles of agreement given by corporations. Laws Penn. 1868, p. 61. The value of such securities (if they could all be properly so described), as compared with other moneyed capital in the hands of individual citizens in that locality, did not appear in that case. What the court had to decide, and all that it did decide, was whether the exemption from local taxation, of mortgages, judgments, recognizances, and money due upon agreements for the sale of real estate, in the hands of individuals, was a partial exemption only ; that is, whether it was so substantial in its nature and operation as to affect the integrity of the general assessment for local purposes. The court, after observing that money at interest was not the only moneyed capital to which the national banking act had reference, and that the words " other moneyed capital " included investments in bank shares and other stocks and securities, said : " This is a partial exemption only. It was evidently intended to prevent a double burden by the taxation, both of property and debts secured upon it. · Necessarily, there may be other moneyed capital in the locality than such as is not exempt. Some part of it only is. It could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt." That case is authority for the proposition that a *partial* exemption by a State, for local purposes, of moneyed capital in the hands of individual citizens does not, of itself and without reference to the aggregate amount of moneyed capital not so exempted, establish the right to a similar exemption in favor of national bank shares held by persons within the same jurisdiction. But it is by no means an authority for the broad proposition that national bank shares may be subjected to local taxation where a very material part, relatively, of other moneyed capital in the hands of individual citizens, within the same jurisdiction or taxing district, is exempted from such taxation. Indeed, such an

interpretation of the statutes might entirely defeat the purpose that induced Congress to confine State taxation of national bank shares within the limit of equality with other moneyed capital ; for, it would enable the States to impose upon capital invested in such shares materially greater burdens than those to which other moneyed capital in individual hands is subjected.

The case of *Adams* v. *Nashville*, 95 U. S. 19, is also relied upon to support the judgment below. The question there raised was whether an alleged exemption from municipal taxation, under an ordinance of a city, of its interest-bearing bonds, operated to exempt from like taxation the shares in a national bank located in the same city. The court held that as the ordinance had been abrogated by subsequent legislation of the State, no such exemption existed. However, considering the question on its merits, it was said that the act of Congress did not intend "to cut off the power to exempt particular kinds of property, if the legislature chose to do so." In illustration of this view reference was made to exemptions of homesteads, household furniture, school-houses, academies, and libraries—regulations sustained, as a general rule, upon grounds of policy and humanity, or because the property exempted is employed for objects more or less connected with the public welfare. And it was observed that the discretionary power of the legislature over such subjects remained as before the act of 1868, the intention of that statute being to protect corporations formed under its authority from *unfriendly* discrimination by the States in the exercise of their taxing power. "That particular persons or particular articles are relieved from taxation is not a matter to which either class can object." It is scarcely necessary to say that this language leaves untouched the question as to the power of the State to subject the shares of national banks to taxation, when a very material portion of other moneyed capital in the hands of individual citizens and corporations, is exempted from like taxation.

The court has had occasion to examine the provisions of the national banking act in several other cases recently determined. *People* v. *Weaver*, 100 U. S. 539 ; *Pelton* v. *National Bank*, 101 U. S. 143 ; *Cummings* v. *National Bank*, 101 U. S.

153 ; *Supervisors* v. *Stanley,* 105 U. S. 305 ; *Evansville Bank* v. *Britton,* 105 U. S. 323.

From these cases may be deduced certain rules for the construction of that act :

1. That the words "at a greater rate than is *assessed* upon other moneyed capital in the hands of individual citizens" refer to the entire process of assessment, which, in the case of national bank shares, includes both their valuation and the rate of percentage on such valuation ; consequently, that the act of Congress is violated if, in connection with a fixed percentage applicable to the valuation alike of national bank shares and of other moneyed investments or capital, the State law establishes or permits a mode of assessment by which such shares are valued higher in proportion to their real value than is other moneyed capital.

2. That a State law which permits individual citizens to deduct their just debts from the valuation of their personal property of every kind, other than national bank shares, or which permits the tax-payer to deduct from the sum of his credits, money at interest or other demands to the extent of his *bona fide* indebtedness, leaving the remainder to be taxed, while it denies the same right of deduction from the cash value of bank shares, operates to tax the latter at a greater rate than other moneyed capital.

These decisions show that, in whatever form the question has arisen, this court has steadily kept in view the intention of Congress not to permit any substantial discrimination in favor of moneyed capital, in the hands of individual citizens, as against capital invested in the shares of national banks. In *People* v. *Weaver*, the court said : " As Congress was conferring a power on the States which they would not otherwise have had, to tax these shares, it undertook to impose a restriction on the exercise of that power, manifestly designed to prevent taxation which should discriminate against that class of property as compared with other moneyed capital. In permitting the States to tax these shares it was foreseen that the States might be disposed to tax the capital invested in these banks oppressively. This might have been prevented by fixing

a limit on the amount. But Congress, with due regard to the dignity of the States, and with a desire to interfere only so far as was necessary to protect the banks from anything beyond their equal share of the public burdens, said : You may tax the real estate of the banks as other real estate is taxed, and you may tax the shares of the bank as the personal property of the owner, to the same extent you tax other moneyed capital invested in your State. It was conceived that by this qualification of the power of taxation equality would be secured and injustice prevented."

We come now to consider whether the laws of Pennsylvania, under which defendants propose to levy a tax for county purposes, upon the plaintiff's shares of stock, are open to the objection that they violate the principle of equality, which the act of Congress intended to establish between capital invested in such shares, and other moneyed capital ?

By a law of that State, passed March 31, 1870—upon which the defence mainly rests—it is provided, " That all the shares of national banks, located within this State, and of banks and savings institutions incorporated by this State, shall be taxable for State purposes at the rate of three mills [subsequently, four] per annum upon the assessed value thereof; and for county, school, municipal and local purposes at the same rate as now is or may hereafter be assessed and imposed upon other moneyed capital in the hands of individual citizens of this State." Laws of Penn. 1870, p. 42. This act suggests, upon its face, the inquiry as to what moneyed capital, in the hands of individual citizens, is subject to taxation for county and other local purposes ; for, such capital, if exempted from local taxation at the date of the passage of that act, remains exempt, unless the legislature of the State has since subjected it to taxation. Evidently, in respect of taxation for local purposes, the legislature did not intend, by the act of 1870, to remove the then existing exemptions, and subject all moneyed capital, of whatever description, to such taxation ; but only to establish a uniform rate of local taxation as between capital invested in national bank shares, and such, and only such, moneyed capital as was then, or might hereafter be, subjected to taxation.

To ascertain what moneyed capital was at the passage of the act of 1870, or has since become exempted in Pennsylvania from taxation for county purposes requires an examination of several statutes commencing with the one passed in 1844. The latter subjected to taxation, "for all State and county purposes whatsoever," the following personal property : mortgages ; money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment; articles of agreement and accounts bearing interest, except notes or bills for work and labor done, and bank notes ; shares or stock in any bank, institution or company then or thereafter incorporated by or in pursuance of any law of the State, or of any other State or government ; shares of stock or weekly deposits in unincorporated saving fund institutions ; public loans or stocks, except those issued by the State ; money loaned or invested on interest in any other State. . 2 Brightly's Purdon's Dig. 1380 ; Laws Penn. 1844, p. 497.

In 1850 shares of stock in State banks, created after the State banking act of 1850, were relieved from taxation for county purposes. Laws Penn. 1852, p. 443 ; 1 Grant, 35. And in 1854 all bonds or certificates of loan of any railroad company incorporated in the State were declared liable to taxation " for State purposes only." 2 Brightly's Purdon's Dig. 1369, § 81.

By an act approved April 12, 1859, it was provided that thereafter the capital stock of all banks, savings institutions, and companies whatever of the State, " shall be subject to and pay a tax into the treasury of the commonwealth annually, at the rate of one half mill for each one per cent. of dividend made or declared by such bank, savings institution, or company ; " and in case of no such dividend being declared, then three mills upon a valuation of the capital stock, agreeably to the above act of 1844. The same act exempted from tax upon dividends any institution or company (except banks of issue) then liable for tax on capital stock. It was further declared that that act should not be so construed as to make building associations, plank-road or turnpike companies liable for any tax to the commonwealth, when such companies make or de-

clare no dividends. Laws Penn. 1859, p. 529. And by an act
passed January 3, 1868, it was declared that from and after its
passage the shares of stock held by any stockholder in any in-
stitution or company incorporated under the laws of the State,
which in its corporate capacity is liable to, and pays into the
State treasury the tax imposed by the act of April 12, 1859,
"shall not be taxable in the hands of said stockholder per-
sonally, for State, county, or local purposes;" so much of the
act of 1844 as imposed a tax for State or county purposes upon
any stockholder in his individual capacity being repealed in
terms, without relieving such corporations from any tax then
imposed by law, or their real estate from any State, county,
or local tax to which it then was or might thereafter b'. sub-
jected. Laws Penn. 1868, p. 1318.

Then followed the act of 1879, by the third section of which
every incorporated company or association doing business in
Pennsylvania, or having capital employed there in the name of
any other company or corporation—except foreign insurance
companies, banks, and savings institutions—was required to
pay a certain annual tax on its capital stock into the State
treasury. Laws Penn. 1879, p. 112.

This brings us to the act of June 10, 1881, whereby mort-
gages ; moneys owing by solvent debtors, whether by promis-
sory note, penal or single bill, bond or judgment; articles of
agreement and accounts bearing interest—except notes or bill
for work and labor done; obligations to banks for money
loaned ; bank notes ; shares of stock in banks, banking or saving
institutions or companies, then or thereafter incorporated under
any law of Pennsylvania; public loans or stocks, except those
issued by that State or the United States ; money loaned or in-
vested in any other State, and all other moneyed capital in the
hands of individual citizens of that State ; are declared " to be,
and are hereby, taxable for State purposes, at the rate of four
mills on the dollar of the value thereof annually ; *provided,*
that all mortgages, judgments, and recognizances whatsoever,
and all moneys due or owing upon articles of agreement for
the sale of real estate, shall, after the passage of this act, be
exempt from all taxation except for State purposes ; *provided,*

the provisions of this act shall not apply to building and loan associations," the money loaned by them being subjected to the same tax as money loaned by individuals. By the second section of the same act, all corporations paying interest on a loan or loans, taxable for State purposes, whether secured by bond, mortgage, recognizance, or otherwise, are required to report to the auditor-general, annually, the amount of such indebtedness owned by residents of Pennsylvania, and to pay into the State treasury four mills upon every dollar of such indebtedness, such tax to be deducted by the corporation paying it from the interest on such indebtedness; whereupon, " such indebtedness, whether secured by bond, mortgage, judgment, or otherwise, shall be exempt from other taxation in the hands of the holders thereof." Laws Penn. 1881, p. 99.

Unless we greatly misapprehend the effect of this legislation, a very large amount of property made subject by the act of 1844 to taxation for both State and county purposes, has since been relieved from the burdens of county taxation; while the imposition by the act of 1870 upon national bank shares of local taxation at the same rate as was at the latter date, or has been since, imposed upon other moneyed capital in the hands of individual citizens of the State, leaves such shares subject to taxation as provided in the act of 1844. The burden of county taxation, imposed by the latter act, has, at all events, been removed from all bonds or certificates of loan issued by any railroad company incorporated by the State ; from shares of stock in the hands of stockholders of any institution or company of the State which, in its corporate capacity, is liable to pay a tax into the State treasury under the act of 1859; from mortgages, judgments, and recognizances of every kind ; from moneys due or owing upon articles of agreement for the sale of real estate ; from all loans however made by corporations which are taxable for State purposes when such corporations pay into the State treasury the required tax on such indebtedness.

As the present case comes before us upon demurrer to the bill, we have, excepting the allegations of the latter, no means of determining the value of the capital thus exempted from the county taxation which is imposed upon capital invested in

national bank shares.  After referring to the acts of 1870 'and 1881, the bill charges :

" That for the year 1881, as is shown by the public report and by the books of the auditor-general of Pennsylvania, the sum of $1,692,938.66 was paid into the State treasury as tax upon the capital stock of such corporations by them in their corporate capacity, which sum of money was paid upon a gross capital stock of the corporations paying the same, of the value, approximately stated of 564 millions of dollars.

" That it appears, as is shown by the books and published report of the secretary of internal affairs for the year 1881, that the total valuation throughout the State for that year of ' all mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment, also all articles of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever (except notes or bills for work or labor done, and all obligations given to banks for money loaned and bank notes), and all public loans or stocks whatsoever, except those issued by this State or the United States, and all moneys loaned or invested on interest in any other State and all other moneyed capital in the hands of individual citizens of the State,' amounts to $74,931,765 ;

" That for the same year, as is shown by the books and published reports of the auditor-general, a tax was paid into the State treasury upon corporation and municipal loans not probably included in the foregoing sum, upon an aggregate valuation of $51,404,162.50 ;

" That by the provisions of section 1 of the act of 10 June, 1881 (P. L. 99), all mortgages, judgments and recognizances whatsoever, and all moneys due or owing upon articles of agreement for the sale of real estate were exempt from all taxation except for State purposes ;

" That the section 2 of said act of 1881, exempts from local taxation in the hands of the holders thereof, all loans issued by corporations paying interest thereon, where such corporations pay into the State treasury the State tax of four mills on each dollar thereof, and by act of 1 May, 1854 (P. L. 535), ' all bonds or certificates of indebtedness of any railroad company incor-

porated by this Commonwealth be and the same shall be liable
to taxation for State purposes only;'

"That the total paid-in capital of all the State banks and
savings institutions in said Commonwealth, other than national
banks, as appears by the books and published reports of the
auditor-general for the year 1881, is $7,161,740.68, while the
total paid-in capital of the national banks located within said
State, in said year, amounted to $57,452,051."

The demurrer, of course, admits these allegations of fact to
be true. Their materiality is not affected by the circumstance
that they are stated to appear, also, upon the books and pub-
lished reports of the auditor-general and the secretary of in-
ternal affairs of Pennsylvania. Upon such facts, and in view
of the revenue laws of the State, it seems difficult to avoid the
conclusion that, in respect of county taxation of national bank
shares, there has been, and is, such a discrimination, in favor
of other moneyed capital against capital invested in such
shares, as is not consistent with the legislation of Congress.
The exemptions in favor of other moneyed capital appear to be
of such a substantial character in amount as to take the
present case out of the operation of the rule that it is not abso-
lute equality that is contemplated by the act of Congress; a
rule which rests upon the ground that exact uniformity or
eqality of taxation cannot in the nature of things be expected
or attained under any system. But as substantial equality is
attainable, and is required by the supreme law of the land, in
respect of State taxation of national bank shares, when the
inequality is so palpable as to show that the discrimination
against capital invested in such shares is serious, the courts
have no discretion but to interfere.

The Supreme Court of Pennsylvania, after referring to *Hep-
burn* v. *The School Directors*, cited above, as having involved
the same question that is now presented, and observing that the
exemption is here, as there, only partial, says: "Not only is
some other moneyed capital of a miscellaneous character taxable
for local purposes, but all such capital of the same character as
that which you desire to exempt; that is to say, the shares of
State banks and savings institutions." Again: "The General

Assembly has authorized the taxation of the shares of these banks in no other manner and at no higher rate than other capital of a similar character." If by this language it is meant that an illegal discrimination against capital invested in national bank shares cannot exist where no higher rate or heavier burden of taxation is imposed upon them than upon capital invested in State bank shares, or in State savings insti-tutions, we have to say that such is not a proper construction of the act of Congress. Capital invested in national bank shares was intended to be placed upon the same footing of substantial equality in respect of taxation by State authority, as the State establishes for other moneyed capital in the hands of individual citizens, however invested, whether in State bank shares or otherwise. As the act of Congress does not fix a definite limit as to percentage of value, beyond which the States may not tax national bank shares, cases will arise in which it will be difficult to determine whether the exemption of a particular part of moneyed capital in individual hands is so serious or material as to infringe the rule of substantial equality. But unless we have failed to comprehend the scope and effect of the taxing laws of Pennsylvania, and unless the allegations of the bill be untrue, the present case is not of that class.

Our attention is called by counsel for the defendants to the fact that Pennsylvania derives, probably, her principal revenues from railroads, and therefore has good reasons to look to her interests, as a Commonwealth, in respect of such improve-ments. To this fact he refers the legislation which makes rail-road securities liable to taxation for State purposes only, and exempts them from local taxation. Upon like grounds he de-fends the exemptions made, in respect of local taxation, in favor of the bonds and shares of other corporations, that pay an annual tax into the State treasury. It is quite sufficient, in respect of such matters, to say that this court has no function to deal with the considerations of public policy which control that Commonwealth in the assessment of property for purposes of revenue. We have no duty beyond that of ascertaining the intention of Congress in its legislation permitting the several States to tax the shares of institutions organized under national

authority, for the purpose of providing a national currency secured by United States bonds. If the principle of substantial equality of taxation under State authority, as between capital so invested and other moneyed capital in the hands of individual citizens however invested, operates to disturb the peculiar policy of some of the States in respect of revenue derived from taxation, the remedy therefor is with another department of the government, and does not belong to this court.

We are of opinion that upon the allegations of the bill the defendants should have been put to their answer. The facts may then disclose a case quite different from that made by the bill. What we have said relates to the case as now presented.

*The judgment must, therefore, be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*