MERCANTILE NAT. BANK OF CITY OF NEW YORK *v.* MAYOR, ETC., OF CITY OF NEW YORK and another.

*(Circuit Court, S. D. New York.  October 11, 1886.)*

1. TAXES—NATIONAL BANK SHARES—DISCRIMINATION—REV. ST. U. S. § 5219.
    If it appear that the capital represented by national bank shares is subjected in a state to a higher rate of taxation than is assessed upon the moneyed capital generally of the tax-payers, there can be no valid assessment of national bank shares for taxation in that state; and these shares will be relieved from any contribution whatever to the general burden of taxation under Rev. St. U. S. § 5219.

**2. SAME—NEW YORK TAXATION LAWS—EXEMPTIONS.**

Taxation laws of the state of New York considered, and *held* to be designed to subject to equality of burden all taxable property, both real and personal, except investments in life insurance companies, deposits in savings banks, the public stocks, and the bonds of the municipalities of the state.

**3. SAME—REV. ST. U. S. § 5219.**

Section 5219, Rev. St. U. S., relating to state taxation of national bank stock, was not intended to control the power of the state on the subject of taxation, or to prohibit the exemption of particular kinds of property, but to protect the capital invested in national bank shares from unfriendly discrimination by the states in the exercise of the taxing power.

**4. SAME—EQUALITY—INTENTION—OPERATION.**

It does not destroy the equality of a state's system of taxation that, in spite of the laws, a part of the moneyed capital of citizens which is invested in forms that enable it to be easily traced, does not escape by evasion or oversight, and is consequently more effectually reached and taxed than the bulk of the moneyed capital of individuals.

**5. SAME—CORPORATE PROPERTY AND STOCK—SHARES OF STOCKHOLDERS.**

The capital stock of a corporation and the shares held by the several stockholders are distinct species of property for the purpose of taxation,—as distinct as real estate and the mortgage by which it may be incumbered.

**6. SAME—STATE TAXATION LAWS—DISCRIMINATION—REV. ST. U. S. § 5219.**

If the taxation laws of a state subject to taxation the capital stock of certain corporations, but exempt the shares held by the several stockholders, while the shares of national bank stock are subject to taxation in the hands of the shareholders, but the capital stock itself is exempt, *held*, that there is here no such discrimination against capital invested in national banks as to run counter to the provisions of Rev. St. U. S. § 5219.

**7. WORDS AND PHRASES—"MONEYED CAPITAL."**

The term "moneyed capital" has a more limited meaning than the term "personal property," and applies to such capital as is readily solvable in money.

**8. TAXATION—EXEMPTIONS—PUBLIC POLICY.**

The exemption from taxation, by the laws of New York, of shares of life insurance companies, of stock and bonds of New York city, of bonds of other state municipalities, and of deposits in savings banks, is justified by public policy, and does not indicate any unfriendly discrimination on the part of the state as between the shares of national banks and moneyed capital generally.

This was a motion for an injunction *pendente lite* restraining the city of New York from collecting the taxes assessed against the shares of the stockholders of the Mercantile National Bank of New York city; it being claimed by the plaintiff that the tax laws of the state of New York made hostile discriminations against capital in the shape of National bank shares, in violation of the provisions of Rev. St. U. S. § 5219.

*Charles W. Wells* and *Frederick W. Whitridge*, for complainants.

*E. Henry Lacombe*, for the Corporation.

*James C. Carter* and *Thomas Allison*, for defendants.

WALLACE, J. Thirty-five national banking associations located in the city of New York have brought suit against the defendants to restrain them from collecting taxes levied pursuant to an assessment made in January, 1885, upon the shares of the respective stockholders of the several associations. This suit is one of the number, and is here upon a motion for an injunction *pendente lite*. As the case

turns upon questions of law, the decision of this motion will be practically a final decision by this court of the rights of the parties. The fact that these associations pay, in round numbers, a million of dollars annually in taxes upon the shares of their stockholders, and more than one-fourth of the total taxation upon personal property in the city of New York, sufficiently indicates the importance of the controversy to both parties. The case has been prepared with great thoroughness, and has been elaborately and ably argued.

The position of the complainant is that the New York state system of taxation creates or effects a discrimination between the taxation imposed for local purposes (which is everywhere the most onerous taxation) upon national bank shares and that imposed upon the other moneyed capital of individual tax-payers, which is hostile to the former, and forbidden by the act of congress, by which alone authority exists for any taxation of such shares by the states. The theory of this discrimination is that so much of the moneyed capital of individual tax-payers is exempt from assessment by the state laws that what remains, including the capital represented by national bank shares, is subjected to a higher rate of taxation than is assessed upon the moneyed capital generally of the tax-payers. If this position is correct, there can be no valid assessment of national bank shares for taxation in this state, and these shares will be relieved from any contribution whatever to the general burden of taxation.

State taxation of national bank shares is lawful only by the law of congress first enacted as a provision of the national banking act of 1864, which, as amended by the act of February 10, 1868, is now embodied in section 5219 of the Revised Statutes of the United States. The section provides that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." As congress was conferring a power on the states which they would not otherwise have had, to tax these shares, it undertook to impose a restriction on the exercise of that power, manifestly designed to prevent taxation which should discriminate against that class of property as compared with other moneyed capital. If the greater part of the moneyed capital of individual tax-payers of the state is exempt from taxation by the state laws, the rule of equality of burden between such capital and the capital invested in national bank shares, which congress intended to prescribe as a condition of the permission given to the states to tax these shares at all, is violated, and the state whose system permits this discrimination cannot justly complain because national bank shares are wholly exonerated from taxation. This is the result of many decisions of the courts in construction of the law of congress.

The most recent expression of the supreme court of the United States upon the subject is found in *Boyer* v. *Boyer*, 113 U. S. 689, S. C. 5 Sup. Ct. Rep. 706, where it is declared that, "while exact uniformity or equality of burden cannot be expected under any system,

capital invested in national bank shares was intended by congress to be placed upon the same footing of substantial equality, in respect of taxation by state authority, as the state establishes for other moneyed capital in the hands of individual citizens, however invested." In that case the doctrine was applied to a state of things found in the taxing system of the state of Pennsylvania, by the laws of which state there appeared to be exempt from taxation, for local purposes, all mortgages, judgments, recognizances whatever; all moneys due or owing upon articles of agreement for the sale of real estate; all loans issued by corporations which were liable to pay a designated state tax; all bonds or certificates of indebtedness of any railroad company incorporated by the commonwealth; and all shares of stock in the hands of stockholders of any corporation of the state liable to pay a specified tax into the state treasury. The court, in the opinion, used the following language:

"Upon such facts, and in view of the revenue laws of the state, it seems difficult to avoid the conclusion that, in respect of county taxation of national bank shares, there has been and is such a discrimination, in favor of other moneyed capital, against capital invested in such shares, as is not consistent with the legislation of congress. The exemptions in favor of other moneyed capital appear to be of such a substantial character in amount as to take the present case out of the operation of the rule that it is not absolute equality that is contemplated by the act of congress,—a rule which rests upon the ground that exact uniformity or equality of taxation cannot in the nature of things be expected or attained under any system. But as substantial equality is attainable, and is required by the supreme law of the land in respect of state taxation of national bank shares, when the inequality is so palpable as to show that the discrimination against capital invested in such shares is serious, the courts have no discretion but to interfere."

The bill of complaint in the present case is framed to bring the controversy within the scope and principle of this decision. The allegations are that under the laws of this state there is exempted from taxation all moneyed capital represented by shares of stock in all incorporated companies of the state liable to taxation on their capital, exclusive of banks, banking associations, and trust companies; all represented by shares of stock in trust companies and life insurance companies incorporated under the laws of this state; and all represented by deposits in the savings banks of the state, and investments in the bonds and stocks of the state, and the bonds created by the villages, cities, towns, and counties of the state. The bill also alleges that, under the laws of the state as construed by the highest court of the state, all moneyed capital of individuals invested in the shares o stock of corporations of other states or of foreign countries is not taxable. It sets out the amount or value of the respective classes of invested capital which escaped taxation in the year 1885 under the operation of those laws. If the averments are true, the exemptions aggregated over $2,000,000,000 of moneyed capital, while the personal property actually reached and subjected to assessment in the

hands of individuals throughout the state for that year was less than $400,000,000 in valuation.

An examination of the state system will show that, although a comparatively small part of the personal property of the tax-payers is actually reached and subjected to taxation against the tax-payers individually, the result is not attributable to the special features of the taxing system of this state, but is a logical consequence of any system which attempts to reach personal property for direct taxation.

By the fundamental rule of the New York state system, all lands and personal estate within the state, whether owned by individuals or corporations, subject to the exemptions hereinafter specified, is liable to taxation. Rev. St. pt. 1, c. 13, tit. 1, § 1. Personal estate is declared to include all household furniture; moneys; goods; chattels; debts due from solvent debtors, whether on account, contract, note, bond, or mortgage; public stocks, and stocks in moneyed corporations; and such portion of the capital of incorporated companies liable to taxation on their capital as shall not be invested in real estate. Id. § 3. By section 7 of the same title it is provided that "the owner or holder of stock in any incorporated company liable to taxation on its capital shall not be taxed as an individual for such stock;" and by section 1 of title 4 of the same chapter it is provided that "all moneyed or stock corporations deriving an income from their profits or capital, or otherwise, shall be liable to taxation on their capital in the manner hereinafter prescribed." The manner prescribed, as altered by chapter 456, Laws 1857, § 3, is as follows:

"The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll, or as shall have been exempted by law, together with its surplus, profits, or reserved funds exceeding ten per cent. of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this state, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county."

By the Laws of 1880, c. 542, § 3, a franchise tax for the use of the state is imposed upon every corporation, joint-stock company, or association organized under the laws of the state, or of any other state or country, and doing business in this state, except savings banks, life insurance companies, banks, foreign insurance companies, and manufacturing corporations carrying on manufactures within this state; and, by section 8, such corporations, joint-stock companies, and associations as are compelled to pay a franchise tax are exempted from assessment and taxation for state purposes except upon their real estate, but in all other respects remain liable to assessment and taxation. No franchise tax is imposed on banks or banking associations; and in this respect they stand upon an equality with national banking associations, as they do in all other respects for the purposes of taxation under the laws of the state. The capital stock of these as-

sociations is not liable to taxation as against the corporation, but the shares are taxable as a part of the personal property of the individual stockholder. Laws 1882, *c.* 409, § 320.

In the language of a recent decision of the court of appeals, (*In re McMahon*, 6 N. E. Rep. 400, decided April 13, 1886:)

"The general laws of the state require all property, both real and personal, no matter by whom owned, except in certain classes of special exemption, to be assessed for purposes of taxation; this requirement embracing all property owned by individuals as well as corporations, and including all shares of stock held by individuals in corporations except in cases where the capital stock of such corporations is itself liable to taxation as against the corporation."

The exemptions created by the state laws, so far as they are material to this case, are comprised of two classes: (1) Those which include shares of stock in corporations of the state, exempting them from taxation as against the holders or owners individually, and substituting a tax upon the capital stock, at its actual value, against the corporations themselves for local purposes, and a franchise tax for state purposes; and (2) those which include investments in life insurance companies, in the stocks of the state or the bonds of its municipalities, and deposits in savings banks. The exemptions of the first class have reference solely to the mode of collecting a tax on capital invested in corporations in the most efficient way; those of the second class are founded upon considerations of state policy, and are intended to promote peculiar interests for the benefit of the public.

The provisions of the state laws respecting exemptions of the second class are as follows: By the provisions of chapter 552 of the Laws of 1880 certain bonds and stocks of the city of New York are exempt from taxation except for state purposes. By chapter 522 of the Laws of 1881 all bonds thereafter issued by any village, city, town, or county of the state to pay and retire any existing bonded indebtedness which was created in aid of the construction of any railroad are exempt from taxation for local or state purposes. By chapter 534 of the Laws of 1880 the personal property and shares of stock of life insurance companies are exempt from taxation for local purposes, but these companies are required to pay a state tax of 1 per centum annually upon the gross amount of their premiums, interest, and other income. By section 4 of chapter 456 of the Laws of 1857 deposits in any bank for savings which are due to depositors are declared not to be liable to taxation; and, according to the interpretation of some of the state courts, this section is to be construed as exempting the depositors, as well as the corporation, from taxation upon such deposits. Prior to July 1, 1882, the shares of the capital stock of trust companies organized under the laws of the state were taxable, in the hands of individual holders, in the same manner and to the same extent that shares of the capital stock of national banks and state banks were taxable,—that is, they were included in the valuation of the

personal property of the stockholders in the assessment of taxes at the place where the company was located,—but, by an act passed on that day (chapter 409, Laws 1882) to revise the statutes of the state relating to banks, banking associations, and trust companies, no provision was made for taxing them such as was made for taxing banks and banking associations. Section 324 of that act, however, subjects trust companies to a franchise tax for state purposes. These companies are not exempted from taxation for local purposes upon their capital stock, and the result of the legislation respecting them, as is conceded by the counsel for the complainant, is to subject them to the taxation imposed on the miscellaneous incorporated companies of the state; that is, to taxation upon their capital stock, assessed at its full valuation, for local purposes, besides a franchise tax for state purposes.

Respecting the averments of the bill relative to the immunity from taxation of that class of moneyed capital invested in the shares of corporations of other states and foreign countries, it suffices to say that it is not claimed that the state laws exempt such shares from taxation in the hands of individual tax-payers who hold or own them, but they escape taxation because the state courts have decided that such shares are beyond the taxing jurisdiction of the state. Unless these decisions are correct, and the state has no power to tax these shares, such moneyed capital is taxable as part of the personal property of the tax-payer. Thus it appears that, exclusive of exemptions not complained of in the bill, (such as the personal property of the ministers of the gospel to a limited amount, and the personal property of charitable or reformatory institutions,) the state system of taxation is designed to reach and subject to equality of burden, so far as that is practicable in a matter where the intrinsic difficulties are so great, all taxable property, both real and personal, except investments in life insurance companies, deposits in savings banks, the public stocks, and the bonds of the municipalities of the state.

It is not open to fair doubt that the personal property of tax-payers, represented by shares of stock in incorporated companies of the state, is taxed as substantially and as onerously as is the other moneyed capital of the citizens. Indeed, it cannot be reasonably doubted that this kind of personal property is taxed much more effectually and onerously than is the moneyed capital generally of individuals. It does not militate against this proposition that a part of the moneyed capital of citizens which is invested in forms that enable it to be easily traced, and its value accurately ascertained, does not escape taxation by evasion or oversight, and is consequently more effectually reached and taxed that the bulk of the moneyed capital of individuals.. Shares in national banks fall within this category, as do shares in state banks, and also the capital invested in private banking; and capital invested in these forms does undoubtedly bear more than its just burden of taxation, relatively to other moneyed capital or to per-

sonal property generally; but this a result which is not peculiar to the system of taxation of this state, but exists everywhere.

The case is thus narrowed to the question whether the exemptions relating to shares of stock in life insurance companies, to deposits in savings banks, and to certain classes of municipal obligations, together with the special features of the taxation of the capital invested in the shares of miscellaneous corporations, effect a discrimination in taxation between national bank shares and other moneyed capital obnoxious to the law of congress.

In the language of Mr. Justice NELSON in *People* v. *Commissioners, etc.,* 4 Wall. 256:

"It is known as sound policy that in every well-regulated and enlightened state or government certain descriptions of property, and also certain institutions, such as churches, hospitals, academies, cemeteries, and the like, are exempt from taxation; but these exemptions have never been regarded as disturbing the rates of taxation, even where the fundamental law had ordained that it should be uniform."

In *Hepburn* v. *School Directors*, 23 Wall. 480, the section in question was before the court in a case where, by the laws of the state, all mortgages, judgments, recognizances, and money owing upon articles of agreement for the sale of real estate were exempt from taxation except for state purposes; and Chief Justice WAITE, delivering the opinion of the court, said: "It could not have been the intention of congress to exempt bank shares from taxation because some moneyed capital was exempt."

In *Adams* v. *Nashville*, 95 U. S. 19, the unfriendly discrimination complained of consisted in the exemption of certain municipal bonds; the argument being that there were many such bonds in existence in the hands of individuals, and that the complainant's shares being taxed, while the bonds were not, the taxation violated the act of congress. But the court held that the act of congress was not intended to control the power of the state on the subject of taxation, or to prohibit the exemption of particular kinds of property, but was intended to protect the capital invested in national bank shares from unfriendly discrimination by the states in the exercise of the taxing power.

The cases of *Hepburn* v. *School Directors* and *Adams* v. *Nashville* are referred to in the opinion in *Boyer* v. *Boyer* with the comment that they leave untouched the question as to the power of the states to subject shares of national banks to taxation "when a very material portion of other moneyed capital in the hands of individual citizens, within the same jurisdiction or taxing district, is exempted from taxation." No rule was intimated in that opinion defining what exemptions are permissible as within the discretionary policy of the state, or what are so serious as to constitute a very material portion of the moneyed capital of the tax-payers, and an unlawful discrimination against national bank shares. Consequently the question whether

the exemptions in the system of this state are such as to preclude any taxation of such shares is wholly open. This question must be solved by determining what congress meant by the term "other moneyed capital in the hands of individual citizens of such state," and what is substantial equality. as between that kind of capital and the capital invested in bank shares.

It is obvious that if shares of stock in miscellaneous corporations, other than those which are commonly known as moneyed corporations, fall within the designation of "moneyed capital," the very large amount of this kind of capital which, under the system of this state, is exempt from taxation "in the hands of individual citizens," forms a material portion of the aggregate capital. It is contended for the complainant that such shares of stock are moneyed capital, and that they are not assessed in the hands of individual tax-payers, and are therefore to be classed with moneyed capital which is exempt from taxation, in ascertaining whether the rule of equality prescribed by congress is violated.

It is not to be denied that these shares are not taxed technically as the property of the owners by the state laws, although the corporations themselves are taxed for the capital which these shares represent. The capital stock of a corporation and the shares held by the several stockholders are distinct species of property for the purpose of taxation,—as distinct as real estate, and the mortgage by which it may. be incumbered. The corporation and its capital and property are one thing, the stockholders and their shares, quite another. The corporation has the legal title, and right of disposition of all the corporate property, subject to the conditions of its charter. The stockholder's right is to enjoy a proportionate part of the profits, or, upon dissolution of the corporation, a proportionate part of the assets, after payment of debts. This is a distinct, independent interest or property held by the shareholders, like any other property that may belong to him. It is this interest which the act of congress leaves subject to taxation by the states, while the states are denied the power to tax the capital stock of national banks. It is well settled by the authorities that because the property of shareholders in the shares, and the property of the corporation in its capital, are distinct property interests, both may be taxed. *Albany City Bank* v. *Maher*, 6 Fed. Rep. 418; *Van Allen* v. *Assessors, etc.,* 3 Wall. 573; *In re Delaware Railroad Tax,* 18 Wall. 206; *Farrington* v. *Tennessee,* 95 U. S. 679.

It may therefore be fairly urged that congress did not intend that the taxation imposed by the state upon the capital stock of manufacturing, railroad, mining, and many other corporations should be considered in ascertaining whether the taxation of national bank shares is greater or is less than that of money capital in the hands of individual tax-payers. State policy may legitimately dictate different modes and rates of taxation for the different kinds of corporations which the state creates, and discourage the operations of some, and

foster the interests of others, by a diversity of taxation. And it would be manifestly difficult, if not impossible, in view of the discriminations which are found in the system of every state, to deduce any general rule of taxation, and make it the test of the lawful taxation of national bank shares.

But it does not follow that the capital invested in such corporations is to be classed as exempt from taxation in ascertaining whether national bank shares are subjected to unfriendly discriminations. When it appears that the capital of individual tax-payers invested in these shares is required to bear as great a burden of taxation as that invested in national bank shares, there is no reasonable or real foundation for the claim of hostile discrimination. While congress did not intend that the taxation of the states on the property of corporations should furnish the rule or standard of the taxation authorized for national bank shares, but intended to limit the states to a taxation no greater than that imposed on the moneyed capital of their individual citizens, there is no reason to suppose that congress cared at all about the mode the states migh' adopt for the collection of their taxes. A tax imposed on the capital or property of a corporation falls as effectually on the capital of the shareholder, represented by his shares, as does a tax upon the shares directly; and although, in legal discrimination, a tax upon the former is not a tax upon the latter, practically and substantially taxation of the capital of the corporation is taxation of the capital of the shareholder.

If shares of stock in corporations other than moneyed corporations are not "moneyed capital," then it is immaterial to the question under consideration whether such shares are subjected to taxation directly or indirectly; and, even if the capital invested in such shares is not taxed at all, it should not be classed with exempt capital in ascertaining whether a material portion of the moneyed capital of individuals is exempt. The supreme court has never decided precisely what signification belongs to the term "moneyed capital" as used in the act of congress. It is hardly appropriate to call shares in manufacturing or trading corporations "moneyed capital in the hands of individual citizens;" and, if congress had intended to include all capital thus invested, it would have been easy to do so under some such comprehensive term as "personal property." It is not obvious how the equitable interest of the shareholder in such corporations, which entitles him to share in the profits, or, upon dissolution, in the division of the assets, should be deemed moneyed capital, any more than the capital invested in any other kind of personal property which can be converted into money by sale is to be deemed moneyed capital. Shares of stock in moneyed corporations, such, for instance, as trust companies, and capital invested in the business of private banking, is doubtless appropriately described as moneyed capital. So, also, the capital represented by all obligations which are solvable in money, such as notes, bonds, certificates of indebtedness, and other

securities for the payment of money, would seem to be within the description. The capital which was exempt from local taxation under the laws of Pennsylvania, and which the court held in *Boyer* v. *Boyer* to be a material portion of the moneyed capital of individual tax-payers, was almost wholly of this kind, being mortgages, judgments, bonds, certificates of indebtedness, and moneys owing upon articles of agreement. It is true that shares of stock of all corporations of the state liable to pay a state tax were also exempt in that case; but no emphasis was placed, in the opinion of the court, upon the exemption of this kind of capital, and, of course, this exemption included shares of stock in moneyed corporations as well as in other corporations. The term "moneyed capital" has a more limited meaning than the term "personal property," and it must be assumed that it was employed deliberately in the act of congress to denote more restricted forms of invested capital. In one sense, the capital invested by the merchant or the manufacturer in his business is moneyed capital; but it is no more so than that which the professional man has invested in his library, or the mechanic in the implements of his trade; and, if such investments are to be deemed moneyed capital, then the term has substantially as wide signification as the term "personal estate." If the capital of the merchant or the manufacturer is not moneyed capital, it would seem to follow that the interests represented by the shares of manufacturing or trading corporations are not appropriately described as moneyed capital.

The supreme court say, in *Evansville Bank* v. *Britton*, 105 U. S. 324:

"The act of congress does not make the tax on personal property the measure of the tax on bank shares in the state, but the tax on moneyed capital in the hands of individual citizens. Credits, money loaned at interest, and demands against persons or corporations are more purely representative of moneyed capital than personal property, so far as they can be said to differ. Undoubtedly there may be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital."

If it should be assumed, however, that congress meant to include in the term "moneyed capital" all capital invested in business, or for income not represented by real estate, and that shares of miscellaneous corporations are therefore included, this kind of capital should not be deemed exempt from taxation under the system of this state, because, as has been already stated, it is taxed as effectually and as onerously as other kinds of moneyed capital of individual citizens; and, although such taxation is not assessed against the shares directly, it falls ultimately and inevitably upon the capital of the individual invested in it. The beneficiaries of a trust-estate are the persons upon whom the taxation of the estate really falls, although the assessment is not made against them, but against the trustee, who has the legal title of the personal property.

It only remains to be considered whether the exemptions of shares of life insurance companies, of the stocks and bonds issued by the city of New York, of the bonds issued by other municipalities of the state, and of the deposits in savings banks, are such as to manifest a serious discrimination against national bank shares.

The assessable value of the shares of life insurance companies in this state is relatively an insignificant part of the whole moneyed capital of the tax-payer; and the exemption is made to foster a class of corporations which exercise a salutary influence upon the community.

The assessable value of the bonds and stocks issued by the city of New York which are exempt from local taxation appears, by the stipulation of the parties, to be $13,467,000. Assuming that these securities are principally held by citizens of the state, it is not obvious how holders of national bank shares have any substantial ground for complaint at the exemption from taxation. These securities are taxable for state purposes. Inasmuch as national bank shares are taxed at the place where the bank is located, and not elsewhere, the holders of such shares have the same interest as all other tax-payers of the municipality which has created a debt in having the best sum possible realized from the obligations issued to meet it. Such obligations are exempted from taxation in the hands of the holder, to enhance their value in the market, and to enable the municipality to realize more from them in diminution of the burden of taxation. The holders of national bank shares derive the same benefit from the exemption as do others who are taxed upon their moneyed capital for local purposes in the same taxing district. The same observations apply measurably to the exemption of the bonds of the other municipalities of the state, although these are not taxable for state purposes, and it may therefore happen that the tax-payers of certain municipalities are to that extent compelled to contribute to taxation for which they have derived no direct benefit. This is one of those instances of inequality which illustrate the axiom that absolute equality and strict justice are unattainable in tax proceedings. The exemption is restricted to a limited class of these obligations; and, in the absence of any attempt on the part of the complainant to show that they are of any considerable amount relatively to other moneyed capital, it is to be assumed that but little importance should be attached to this exemption.

The more important exemption is that of the deposits in savings banks. The aggregate of these deposits is quite large, being in the year 1885 over $437,000,000. Savings banks in this state are not permitted to owe any depositor more than the sum of $3,000, (Laws 1878, c. 347, § 2;) and it appears by the report of the superintendent of the banking department that the average of these deposits on the first day of January, 1886, was $378 each. These deposits represent mainly the savings of people of small means. It is not prob-

able that a twentieth part of the whole would be actually reached for taxation if they were not exempt. Such accumulations tend to the extinction of pauperism, to the encouragement of economy, and to the general thrift and comfort of the masses of the people. It is as much the part of a wise policy on the part of the state to encourage them as it is to encourage benevolent and charitable institutions. Such an exemption reduces the burden of taxation on other moneyed capital.

None of the exemptions which have thus been considered manifest any unfriendly discrimination on the part of the state as between the shares of national banks and moneyed capital generally. Taken together, they form a much less important part of moneyed capital generally than was exempt by the state laws in the case of *Hepburn* v. *School Directors*, where the exemption was treated as not disturbing the rule of equality of the act of congress. Compared with the exemptions considered in *Boyer* v. *Boyer*, they are insignificant. It is therefore held that they are not of a character to justify the complainant's contention.

The conclusion reached is in accord with the recent decision of the court of appeals of this state in *McMahon* v. *Palmer*, 6 N. E. Rep. 400, where it was held by the court, upon a full consideration of the question presented here, that the taxing system of this state does not result in taxing national bank shares at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state.

The motion for an injunction is denied.