## MINNEHAHA NAT. BANK v. ANDERSON, County Treasurer, et al.

(District Court, D. South Dakota. December 11, 1924.)

1. Equity ⬦411, 414—Court may modify, set aside, or correct master's report.

Court has power to set aside, modify, or correct master's report in any manner consistent with record and demands of justice.

2. Taxation ⬦611(6)—Evidence held to show state taxation of capital of national bank at rate prohibited by federal statute.

In suit by national bank to enjoin collection of tax under laws of South Dakota, on its capital stock as in violation of Rev. St. § 5219 (Comp. St. § 9784), prohibiting state taxation at greater rate than upon capital of individuals, evidence *held* to show that capital of individuals and companies on which state tax of three mills was imposed was in active competition

within the statute, with moneyed capital invested in complainant bank engaged in loaning money on real estate and in buying notes and bonds, on which tax of nearly 35 mills was imposed.

**3. Taxation ⬦12 — Statute held intended to prevent discrimination against moneyed capital of citizens invested in shares of national bank.**

Rev. St. § 5219 (Comp. St. § 9784), prohibiting states from taxing national bank shares at greater rate than assessed on other moneyed capital of individual citizens, was intended to prevent discrimination against moneyed capital of citizens invested in shares of national bank, and it is immaterial that state bank shares are taxed equally with shares of national banks.

**4. Taxation ⬦365—Amendment to statute relating to taxation of national bank stock held not retroactive.**

Act March 4, 1923, amending Rev. St. § 5219, prohibiting state taxation of national bank shares at greater rate than on other moneyed capital in hands of individual citizens, by adding thereto that capital of individual citizens not used in banking or investment business and not in competition with such business shall not be deemed moneyed capital, is not retroactive in view of subdivision 4.

**5. Taxation ⬦365—Amendment to statute prohibiting discrimination in taxing national banks held to authorize state to cure illegal statute to extent it could have been valid originally.**

Under Rev. St. § 5219, as amended March 4, 1923, state statute being illegal because it taxes national bank stock at greater rate than moneyed capital of individual citizens, state is given power by curative act to ratify tax to extent it could have been valid originally.

In Equity. Suit by the Minnehaha National Bank against J. O. Anderson, as Treasurer of Minnehaha County, N. D., and another. Decree for complainant.

Boyce, Warren & Fairbank, of Sioux Falls, S. D., for plaintiff.

Buell F. Jones, of Britton, S. D., and Everett D. Roberts, of Pierre, S. D., for defendants.

ELLIOTT, District Judge. I have considered the issues in re Minnehaha National Bank, Complainant, v. J. O. Anderson, as Treasurer of Minnehaha County, State of South Dakota, and F. E. Ward, as Auditor, etc., Defendants, and have determined the issues in favor of the complainant and against the defendants.

[1] I have no difficulty in determining that the court has the power, and that it is its duty, to consider and determine the exceptions to the report of the master. I think there can be little question that it is within the power of this court to set aside, modify, or correct the report of the master, in any manner consistent with the record and the demands of justice.

There is no necessity here to consider the presumptions in favor of the findings of fact by the master, for the reason that there is substantial testimony supporting the findings of fact excepted to by the defendants, and nothing in the record tending to dispute the testimony of the complainant upon which these findings are based.

The first exception of the defendants is to the findings of the master under the heading "6c," and refers to the fact that the capital of the corporations in Minnehaha county alleged to be competing with the complainant in the making of loans was used as a revolving fund in the handling of the business of these corporations, etc., as more fully appears by the report. I find an entire absence of testimony in the record to dispute this fact, and as I understand the record there is no attempt to dispute it.

The second exception was taken to the finding of the master No. 11, as follows:

"Which they loaned upon real estate mortgages within a radius of 100 miles of the city of Sioux Falls, in the sum of $351,-140, and all of this money was so loaned and handled for the purpose of investment and in order to obtain interest thereon."

It is conceded by counsel for complainant, and the record discloses without dispute, that this is an error. The amount should be $251,140. There is no dispute in the record upon any other element embraced within this finding.

The third exception of the defendants is to the finding of the master numbered 12, as follows:

"From the foregoing finding it is further found that a substantial part of the personal property (hereinafter referred to as moneys and credits) so listed by individual citizens within the city of Sioux Falls and county of Minnehaha, upon which a tax of three mills was levied for the year 1921, and also a large portion of the money loaned and otherwise invested by individual citizens of the city of Sioux Falls and county of Minnehaha, similarly taxed, reference being here made to the foregoing paragraphs setting out a portion of such moneys and credits, was, in a limited sense, in competition, and represented investments acquired, in a like limited sense, in competition with the business of the complainant bank."

This finding of the master must be considered in connection with the balance of said finding 12, as follows:

"It is common knowledge that a large part of the business of the complainant

bank is in purchasing of bonds, warrants, unsecured promissory notes, notes secured by chattel mortgage, and on real estate, and the evidence shows that at all times during the year 1921, the complainant was in the open market for such investments. Without doubt a large part of the moneys and credits listed for taxation in the city of Sioux Falls and county of Minnehaha heretofore referred to were just such investments as complainant would have made had such investments not been seized upon by individual investors."

To this latter portion of the finding no exception was taken, and the record sustains the master's findings.

The exceptions of the defendants therefore must be denied except as to the correction of the figure "3," making it figure "2," in finding 11.

Counsel for complainant duly excepted to the finding of the special master found on page 20 of the master's report, which reads as follows:

"As your special master in this case, I am therefore forced to the finding that there was no evidence admitted at the hearing had in this matter tending to show that the defendants were attempting to collect a tax from complainant in the words of the federal statute relied upon, at a higher rate than any other moneyed capital in the hands of individual citizens of the state, in competition therewith, and that therefore complainant has no ground to complain or object to the tax as levied against it, and that the defendants should be permitted to proceed with the collection of such tax."

This exception on the part of the complainant must be determined in the light of the entire findings of the master. It is possible that this finding excepted to may be considered one of mixed fact and law, the latter determining the entire issue that is presented here, and to justify the conclusions embodied in this finding one must consider the entire record and all of the findings of the master, because it finally disposes of the questions at issue and determines that the complainant is not entitled to the relief demanded.

I have digested the many citations contained in the elaborate briefs furnished by counsel, and while there is an apparent lack of agreement in the decisions of the various courts that have been called upon to construe this section, No. 5219, Rev. Stat. of the United States (Comp. St. § 9784), which provides that state taxation of shares in national banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," the various decisions of the courts are necessarily based upon the record made in the cases before the courts, respectively. No two records are just alike. The suggestions of the master in his finding as to what is meant by "other moneyed capital in the hands of individual citizens of such state," and under the decisions of the courts the meaning of the word "competition," might appeal to me if I felt that the matter presented here were a matter of first impression.

I am of the opinion that an examination of this record, by stipulation of facts made by the parties, the findings made by the master, and viewed in the light of the record in re Eddy, County Treasurer, et al., v. First National Bank of Fargo, 275 F. 550, the Court of Appeals of this circuit has determined the entire issue in favor of the complainant. The record in the case at bar is much stronger than appears in the case above cited. The taxing statutes of the state of North Dakota were substantially the same as those being considered here. The general taxes in that case, for all purposes, assessed upon the shares of banks, national and state, aggregated 35.3 mills per dollar of valuation, exclusive of that invested in real property and taxed as such. The tax in the case at bar for the year 1921 was 34.93 mills per dollar of valuation, making the tax on the stock of the complainant bank for that year $3,493, while if it had been assessed as the moneys of competing loan companies were assessed, it would have amounted to 3 mills on the dollar, or $300. Like the statutes of North Dakota, the South Dakota statutes exempted moneys loaned at interest and invested in interest-bearing notes, bonds, securities, etc., from all taxes except at the statutory rate of 3 mills on the dollar of valuation. The complainant here, as did the complainant in re Eddy v. Bank, above cited, made and kept good a tender of the amount of the tax computed at the 3-mill rate, and asked an injunction only as to the tax above that amount.

[2] There can be no doubt under the record as it obtains in this case that complainant is a national bank, engaged in the conduct of its institution at Sioux Falls, S. D., under its charter as a national bank, with all of the duties and responsibilities, and also all of the privileges accorded it by statutes, of the United States. That the loaning of money upon real estate, the buying of notes and bonds, is an important element in the lawful and legitimate conduct

of the banking business, is conceded. That this complainant was at all times engaged in the making of real estate loans and disposing of them for the accrued interest and commissions is conceded upon the face of this record. There is no attempt to dispute that this, during the years in question, was an important, legitimate element in the yielding of profits to the complainant bank. That the various parties and companies whose business was outlined in the testimony taken in this case were competitors of the complainant bank in the transaction of this element of its business is conclusively shown upon the face of the record, and the master so finds. As an illustration, take the witness Hollister, who testified in regard to Hollister Bros., in substance, as follows:

"I am president of Hollister Bros., a corporation, engaged in the loan and mortgage business in the city of Sioux Falls, capital stock $100,000, held entirely by citizens of Sioux Falls. Handled real estate mortgages in 1921. We loan in part of South Dakota, part of Minnesota, part of Iowa. In 1921 loaned from four to five million dollars for the Equitable Life Assurance Company. All loans run to Hollister Bros., and we assign them to the Equitable Life. When we made the loans, we put our own money into it and then sold them to the Equitable Life. We carried them sometimes ten days or a week, sometimes two or three days. We got our interest. We used our capital stock as the rotating fund in handling this business. Our business was practically all on farm lands. Ninety per cent. was on farm lands within a radius of 100 miles of Sioux Falls."

Upon cross-examination, among other things, he repeated: "Our entire $100,000 capital was used as a rotating fund to invest and reinvest. We have never purchased any loan from the bank that I know of. We have not sold any mortgages to banks in Sioux Falls."

Under the statutes of this state, this corporation was only taxed at 3 mills on the dollar for the amount of money, notes, etc., they had on hand the 1st of May. There is no means of taxing the stock of corporations in this state. They are taxed only upon their property. If the company had any personal property, it would be assessed as other property. The record does not show that it had any.

The record further concedes that the complainant bank was in the market for real estate loans the entire year in question. It is shown that when an applicant for a loan came to the city of Sioux Falls, he "shopped around" among the bankers and the loan companies, taking his loan where he could get it for the least commission and at the lowest rate of interest. This showing as to actual competition is clear in this record, and I find it as clearly established in none of the cases reported. Clearly, upon this entire record, including the findings of the master, the capital of the various individuals examined was in actual, active competition with the moneyed capital invested in the national bank, complainant.

[3] It is not my purpose to review the entire record, or to review the decisions of the different courts upon this question. Suffice it to say that the record in this case, in my judgment, brings the question here presented within the facts involved in the record in re Eddy et al. v. First National Bank, supra. It is my thought that this case in this circuit disposes of this issue. It is made clear by this decision that section 5219, Rev. Stat. U. S., is designed to prevent injurious discrimination against the moneyed capital of individual citizens invested in the shares of national banks. I cite the testimony of Hollister above, as an indication of what the record shows this discrimination really amounted to, which, in my judgment, taken as a whole, with all of the testimony of its kind, shows beyond controversy that the assessment of the stock of this bank at the rate above suggested is a discrimination, and that the same is both appreciable and substantial. It follows that such discrimination is forbidden by the act of Congress, by virtue and within the limitations of which alone may shares of national banks be taxed. Eddy v. First National Bank of Fargo, supra; Boyer v. Boyer, 113 U. S. 689, 5 S. Ct. 706, 28 L. Ed. 1089; Evansville National Bank v. Britton, 105 U. S. 322, 26 L. Ed. 1053.

It is no answer on the part of the defendants to say that the shares of state banks are treated equally with those of national banks, or to make comparisons generally with corporations or their property. The act of Congress itself makes the classification and the comparison, for equal treatment in taxation of moneyed capital is between that belonging, not to banks, national and state, or other corporations, as a class, but to the individual citizens of the state who make its laws and fix their burdens of taxation. Eddy v. Bank, supra.

The Court of Appeals in this circuit based its determination of the issue in the North Dakota case squarely upon Merchants' National Bank v. City of Richmond,

256 U. S. 635, 41 S. Ct. 619, 65 L. Ed. 1135. In the latter case:

"It is to be inferred that a substantial part of this aggregate was in the hands of individual taxpayers."

In the case at bar the record discloses that such is the fact, because individuals were called who had engaged in the business of loaning money upon real estate and had been taxed at the state rate of 3 mills. The Supreme Court in this case says that it is too narrow a view of section 5219, Rev. Stat. U. S., to say that this section is confined to the prevention of discrimination by the states in favor of state banking associations as against national banking associations, as, in addition to the provision with reference to the assessment of their moneyed capital in the hands of individual citizens of the state, there was an express proviso that the tax should not exceed the rate imposed upon the shares of state banks. This was modified by the act of February 10, 1868 (Comp. St. § 9784), in the manner pointed out in Boyer v. Boyer, 113 U. S. 689, 5 S. Ct. 706, 28 L. Ed. 1089, which "precluded the possibility of an interpretation permitting the states, while imposing the same taxation upon national bank shares as upon shares in state banks, to discriminate against national bank shares in favor of moneyed capital not invested in state bank stock."

It is further stated in this opinion that:

"While the words 'moneyed capital in the hands of individual citizens' do not include shares of stock in corporations that do not enter into competition with the national banks, they do include something besides shares in banking corporations and other that enter into direct competition with those banks. They include not only moneys invested in private banking, properly so called, but investments of individuals in securities that represent money at interest and other evidences of indebtedness such as normally enter into the business of banking."

The Supreme Court in the Richmond Case indorses the language used by the Supreme Court in re Mercantile Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895, in defining the policy and purpose of the act as the key to its proper interpretation, as follows:

"The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property."

In the Richmond Case it is then declared that no decision of that court to which its attention has been called has qualified that rule.

It is my judgment that in the case at bar there is a clear showing of competition, that this competition is relatively material in amount, and it follows that upon the undisputed facts set forth in this record, the statutes of the state of South Dakota which taxes these moneys in competition with the national bank at 3 mills on the dollar, and taxes the shares of the national bank at nearly 35 mills on the dollar, exceeded the limitation prescribed by section 5219, Rev. Stat.

My attention is called to amendments to the statutes of the state of South Dakota, and I find that in 1923 the Legislature of the state of South Dakota, whose attention was evidently called to this section of the United States Revised Statutes, amended the Moneys and Credits Act by chapter 108 of the Session Laws of 1923, thereby raising the rate upon moneys and credits from 3 mills to 4 mills, and at the end of the act provides:

"Nothing herein shall apply to money or credits belonging to banks and trust companies situated in this state, which are otherwise assessed and taxed."

At the same session of the Legislature, by chapter 110, the registration tax of 1 mill on the dollar on real estate mortgages was repealed, so that moneys secured by such mortgages are now assessed the same as moneys and credits. At that session (Laws 1923, c. 103) the Legislature also amended section 6696 of the Revised Code of 1919, State of South Dakota, by providing that the capital stock of national banks shall be taxed at the same rate as personal property; but the surplus and undivided profits are taxed at 4 mills on the dollar. This has no relation to the issue here, except as it bears upon the general understanding of

those having the responsibility of the legislation that the tax laws then in force were in excess of the limitation prescribed by the Revised Statutes of the United States in so far as they affected national banks, and with no intent to pass upon the validity of the law that was passed, it is fair to assume that at that time there was an honest effort made to pass a statute that would not conflict with the United States statutes in question.

[4] Section 5219 was amended March 4, 1923 (42 Stat. 1499). It is the contention of the defendants that this amendment simply enacted into law the interpretation of what the statute had theretofore meant. This amendment adds to the statute that moneyed capital in the hands of individual citizens must be in competition with the business of the national banks. Whether it was the intent of Congress or not, this does declare the rule laid down by the Supreme Court of the United States in the interpretation of this statute. The amendment, however, provides that:

"Provided, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

This is a radical change in the act and is contrary to the decisions of the Supreme Court under the statute before it was amended. For declarations of the Supreme Court of the United States as to this change, see Evansville National Bank v. Britton, 105 U. S. 322, 26 L. Ed. 1053; Mercantile National Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895; Merchants' National Bank v. City of Richmond, supra.

This amendment is not retroactive. The last provision, subdivision 4, conclusively determines that it was not intended to be retroactive. It reads as follows:

"The provisions of section 5219 of the Revised Statutes of the United States as heretofore in force shall not prevent the legalizing, ratifying, or confirming by the states of any tax heretofore. paid, levied, or assessed upon the shares of national banks, or the collecting thereof, to the extent that such tax would be valid under said section."

[5] As applied to the case at bar I think a fair interpretation of this amendment is that South Dakota's laws in regard to taxing of national bank stock is illegal and exceeded the limitation prescribed by section 5219, Rev. Stat. U. S., as it existed prior to the amendment. The effect of such law of the state of South Dakota was to prevent the collection of any tax from the complainant in this case because the levy of a tax in excess of 3 mills made the entire tax void. There could legally have been levied a tax of 3 mills against the complainant, but there was no provision in the state statutes for such levy, and therefore nothing could be collected from the bank for that year. Congress, however, by this amendment provided in effect, as I construe it, that the state of South Dakota might pass a curative act, subjecting complainant to the tax of 3 mills, the same as other moneys named in section 5219, Rev. Stat. U. S. The state of South Dakota was thereby given the power, without conflicting with this statute, to confirm or ratify any tax theretofore levied upon the complainant to the extent of 3 mills, the amount that would be valid under the construction given section 5219, as theretofore in force.

It is urged that this subdivision 4, of the amendment of 1923, to the United States statutes, amounts to a curative act of all past taxes whether legal or illegal under that section. I am of the opinion that if that had been the intention of Congress, it would have been its plain duty to say so. I cannot find by a fair interpretation of this language any such intent on the part of Congress.

The complainant in this case recognizes the possibility of an interpretation of this statute making it liable to the extent of 3 mills upon the dollar, and at the beginning of the action deposited the proper amount of complainant's tax, figured at 3 mills upon the dollar, has kept the deposit good, and it is the judgment of the court that complainant is entitled to the relief prayed for in its bill of complaint.

You may forward judgment, with proper exception to the defendants.