STATE v. FIRST NATIONAL BANK OF ST. PAUL.[1]

July 17, 1925.

No. 24,553.

**State taxation of national bank stock.**

1. The shares of national banks can be taxed by the states only in the manner and to the extent authorized by section 5219, U. S. R. S. and the construction given to that statute by the Federal courts is binding on the state courts.

**Not taxable at higher rate than moneyed capital of individuals.**

2. Under that statute such shares cannot be taxed at a greater rate than moneyed capital in the hands of individual citizens employed in competition with such banks.

**Definition of moneyed capital employed in competition with national banks.**

3. Interest-bearing demands against persons or corporations and money loaned or invested in securities, including personal investments of surplus funds, are deemed moneyed capital employed in competition with such banks.

[1]Reported in 204 N. W. 874, 205 N. W. 375.

Rate of tax against such bank stock descrimination forbidden by law.

4. Large amounts of such moneyed capital so employed are held by individuals, and are taxed under the money and credits act at the rate of 3 mills on the dollar, while the shares of defendant are taxed at several times that rate. This is a discrimination forbidden by the statute, although the purpose in taxing such capital at such a low rate was to increase the revenue therefrom.

Stockholders cannot deduct their liabilities in fixing taxable value of their stock.

5. The tax on national bank shares is against the holders thereof, not against the bank, and the holders cannot deduct their liabilities in fixing the taxable value of the shares.

Federal statute permits different method of taxing capital of state banks and capital of national banks.

6. Taxing the shares of national banks against the holders, and the moneyed capital of state banks against the banks, thus allowing state banks to deduct their tax exempt securities in fixing the taxable value of such moneyed capital is permissible under the Federal statute.

Effect of act of March 4, 1923.

7. The act of March 4, 1923, amending section 5219, U. S. R. S. does not legalize invalid taxes theretofore levied, but authorizes the state to collect such taxes to the extent that they would be valid under the prior law.

1. See Courts, 15 C. J. pp. 933, 935, § 318; Taxation, 37 Cyc. pp. 830, 832.

2. See Taxation, 37 Cyc. p. 835.

3. See Taxation, 37 Cyc. p. 836.

4. See Taxation, 37 Cyc. p. 837 (Anno).

5. See Taxation, 37 Cyc. pp. 833, 1034.

6. See Taxation, 37 Cyc. p. 838 (Anno).

7. See Taxation, 37 Cyc. p. 835.

8. See Taxation, 37 Cyc. p. 787.

In proceedings in the district court for Ramsey county to enforce payment of delinquent personal property taxes for the years 1921 and 1922, the First National Bank interposed answers, alleg-

ing among other matters that the taxes levied were illegal because largely in excess of those levied against moneyed capital in the hands of individual citizens competing with national banks, and that Laws 1921, c. 416, was void because repugnant to the Federal Constitution and laws. The matter was heard by Bechhoefer, J., who ordered judgment in favor of the state. Defendant appealed from an order denying its motion for a new trial. Reversed.

*O'Brien, Horn & Stringer,* for appellant.

*Clifford L. Hilton,* Attorney General, *Rollin L. Smith,* Assistant Attorney General, *Harry H. Peterson,* County Attorney, *Roy A. MacDonald,* Assistant County Attorney, and *Patrick J. Ryan,* for respondent.

TAYLOR, C.

The state brought these proceedings to obtain judgment against defendant, a national bank located in the city of St. Paul in the county of Ramsey, for the personal property taxes assessed against its shareholders for the years 1921 and 1922. The proceedings were separate for each year but involve the same questions and were tried together by consent. Defendant interposed answers asserting that the taxes were illegal and void for the reason that its shares were taxed at a rate largely exceeding the rate at which moneyed capital in the hands of individual citizens employed in competition with national banks was taxed. The trial court made extended findings and directed judgment for the state. Defendant appealed from an order denying a new trial. The facts are undisputed and the controversy is in respect to the conclusions to be drawn therefrom.

National banks being organized under the laws of the United States as instrumentalities of the national government, the state cannot tax them or their shares except as authorized by Congress. Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 Sup. Ct. 23, 68 L. ed. 191, and cases cited. The state cannot tax such banks directly, for Congress has never given authority to do so, and in the years 1921 and 1922 it could tax the shares of such banks only as authorized by section 5219, U. S. R. S. which reads:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

This section was amended by the act of March 4, 1923, 42 St. 1499, also found in Fed. St. Ann. 1923 Supp. at page 84, and the amendment applies to taxes for the years subsequent to 1922.

Section 5219 grants power to the state to tax the shares of national banks to the holders thereof, subject to the two restrictions named. Defendant contends that the tax upon such shares, as assessed under chapter 416, p. 644, L. 1921, of the state of Minnesota, violates the requirement that "the taxation shall not be a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state."

Chapter 416, p. 644, L. 1921, appears as sections 2023, 2024, 2025 and 2026 of the General Statutes of 1923. Section 2023 provides:

"The shares of stock of every bank in this state organized under the laws of the United States, and the moneyed capital of every bank or mortgage loan company organized under the laws of this state shall be assessed and taxed at forty (40) per cent of the true and full value thereof."

Section 2024 provides that the shares of stock of national banks shall be taxed against the holders thereof but in the name of the

bank, and that such taxes shall be paid by the bank as agent of the stockholders. It also provides that "the moneyed capital" of state banks and mortgage loan companies shall be taxed against the bank or loan company, and that the tax shall be paid by the bank or loan company. Section 2025 provides that the basis for determining the taxable value of the shares of stock of banks organized under the laws of the United States and the moneyed capital of banks and mortgage loan companies organized under the laws of this state shall be determined by deducting the amount of authorized investments in real estate from the aggregate amount of the capital, surplus, undivided profits and other funds of such bank or loan company.

The statute (G. S. 1913, § 2316), provides that money and credits shall be taxed at the rate of 3 mills on the dollar of the fair cash value thereof and shall be exempt from all other taxation, but further provides that this provision shall not apply to money and credits belonging to incorporated banks, nor to indebtedness on which a tax is paid under sections 2301 to 2309 of the General Statutes of 1913. These sections impose a tax of 15 cents on each $100 of debts secured by real estate mortgages where the debt matures not later than five years from the date of the mortgage, and a tax of 25 cents on each $100 where the debt matures more than five years after the date of the mortgage. The mortgage cannot be recorded nor used as evidence until this tax is paid, and payment of it exempts the debt from all other taxes, except inheritance taxes. The term "mortgage," as used here, includes executory contracts for the sale of land where the vendee takes possession thereof and every instrument evidencing a lien of any kind on real estate as security for a debt. The statute G. S. 1923, § 1980, defines money as including gold and silver coin and all forms of currency in common use and all deposits subject to withdrawal in money on demand, and defines credits as including every claim and demand for money or other valuable thing.

As the states have no power to tax national banks or the shares therein except as granted to them by Congress, the construction

given by the Supreme Court of the United States to the act granting such power and defining its limits is binding and conclusive upon the state courts. It is settled by the decisions of that court that the term, "moneyed capital in the hands of individual citizens," as used in section 5219, intends only the moneyed capital in the hands of individuals which is employed in competition with national banks. The various uses of moneyed capital which bring it within the statute have been plainly indicated in the numerous cases which have considered that question. In Mercantile Nat. Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. ed. 895, the court reviewed the prior decisions and pointed out the uses of capital which would be deemed to be in competition with the banks. In the later case of Merchants' Nat. Bank v. Richmond, 256 U. S. 635, 639, 41 Sup. Ct. 619, 65 L. ed. 1135, this question was again considered and the court said:

"By repeated decisions of this court, dealing with the restriction here imposed, it has become established that while the words 'moneyed capital in the hands of individual citizens' do not include shares of stock in corporations that do not enter into competition with the national banks, they do include something besides shares in banking corporations and others that enter into direct competition with those banks. They include not only moneys invested in private banking, properly so called, but investments of individuals in securities that represent money at interest and other evidences of indebtedness such as normally enter into the business of banking. In Evansville Bank v. Britton, 105 U. S. 322, 324 [26 L. ed. 1053, 1054], the court said: 'The act of Congress does not make the tax on personal property the measure of the tax on bank shares in the state, but the tax on moneyed capital in the hands of the individual citizens. Credits, money loaned at interest, and demands against persons or corporations [640] are more purely representative of moneyed capital than personal property, so far as they can be said to differ. Undoubtedly there may be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital.

*But the rights, credits, demands, and money at interest mentioned in the Indiana statute, from which bona fide debts may be deducted, all mean moneyed capital invested in that way* * * * We are of opinion that the taxation of bank shares by the Indiana statute, without permitting the shareholder to deduct from their assessed value the amount of his *bona fide* indebtedness, as in the case of other investments of moneyed capital, is a discrimination forbidden by the act of Congress.'

"And in Mercantile Bank v. New York, 121 U. S. 138, [30 L. ed. 895, 7 Sup. Ct. 826], the court speaking by Mr. Justice Matthews, after reviewing previous decisions and pointing out (p. 154) the policy and purpose of the act as the key to its proper interpretation, proceeded to declare (p. 157 [7 Sup. Ct. 836]): 'The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. *It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment.* In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property.'—proceeding then to quote the passage we have cited from Evansville Bank v. Britton, supra.

[641] "In Amoskeag Savings Bank v. Purdy, 231 U. S. 373, 390, 391 [58 L. ed. 274, 281, 282, 34 Sup. Ct. 114], the above mentioned declaration of the court in Mercantile Bank v. New York, 121 U. S. 138, 157 [30 L. ed. 895, 902, 7 Sup. Ct. Rep. 826], including the citation from Evansville Bank v. Britton, was repeated, and it was pointed out that the rule of construction thus laid down had since been consistently adhered to. No decision of this court to which

our attention is called has qualified that rule, or construed § 5219 as leaving out of consideration the rate of state taxation imposed upon moneyed capital in the hands of individual citizens, invested in loans or securities for the payment of money, either for permanent or temporary purposes, where such moneyed capital comes into competition with that of the national banks."

As we understand these decisions, credits in the form of interest-bearing demands and money invested in loans or securities, whether such investments are of a permanent character or for a temporary purpose, and also shares of stock held by individuals in corporations, the business of which is the making of profit by using their capital as money, that is, by loaning it at interest or investing it in interest-bearing securities, are deemed moneyed capital used in competition with national banks within the meaning of section 5219.

The court found that the assessed value of the shares of stock of defendant in each of the years 1921 and 1922 slightly exceeded $6,000,000, of which 40 per centum was taken as the basis for taxation, and that the assessed value of moneys and credits in each of those years exceeded $400,000,000 in the state and $83,000,000 in Ramsey county. The court further found that the assessed value of money and credits in the City of St. Paul in each of those years exceeded $76,000,000, of which approximately two-thirds was held by corporations and one-third by individuals.

The court further found:

"No material or substantial portion of the money and credits so listed and assessed consisted of moneyed capital in the hands of individual citizens of this state coming into competition with that of national banks or causing any inequality or discrimination in taxation as against national banks or their shareholders generally."

Defendant attacks this finding as not warranted by the evidence.

In the year 1921, the shares of stock in defendant bank were taxed at the rate of 67 mills on the dollar on 40 per centum of their value, equivalent to 26.8 mills on their full value. In the year 1922, they were taxed at the rate of 61.5 mills on 40 per centum of their

value, equivalent to 24.6 mills on their full value. Money and credits were taxed in those years at 3 mills on the dollar of their value. The rate of taxation upon the shares of the bank was several times the rate of taxation upon moneyed capital in the hands of individuals, and was clearly a discrimination forbidden by the Federal statute unless we can say that it does not appear that any substantial part of such moneyed capital was used in competition with national banks.

Numerous tables are in evidence showing the nature and the amounts of the investments held by national banks, by state banks, by other corporations and by individuals. These tables were prepared mainly, if not entirely, from official records, and their correctness is conceded. They are too voluminous to be summarized within any reasonable space. Some cover the entire state, some Ramsey county only.

Money and credits are listed for taxation under 15 items, of which No. 4 is promissory notes, No. 5 is bonds exclusive of tax-exempt bonds and bonds secured by real estate mortgages on Minnesota land, and No. 10 is book accounts. The amount of these three items assessed in the county of Ramsey for the year 1921 was as follows: Promissory notes held by corporations $4,783,754, held by individuals $2,481,446; bonds held by corporations $694,820, held by individuals $7,595,975; book accounts held by corporations $34,-206,204, held by individuals $2,566,712. The amount of the same items assessed in Ramsey county for the year 1922 was as follows: Promissory notes held by corporations $5,176,615, held by individuals $1,648,810; bonds held by corporations $853,065, held by individuals $9,931,955; book accounts held by corporations $32,115,187, held by individuals $2,502,235. Of course, the amount of these items held in the state is many times these sums.

Defendant contends that these items, and also other items assessed as credits and aggregating large amounts, represent moneyed capital employed in competition with national banks. Plaintiff claims that the record does not require a finding that the funds invested in these credits come into competition with national banks within the mean-

ing of section 5219. "The court is required to take judicial notice of the general conditions to which the law applies;" and defendant insists that the taxing laws, construed in the light of conditions generally known, show upon their face that they create a discrimination against national banks not permitted by the Federal act. Although there is force in this contention, the present case does not rest upon it.

It appears from the undisputed testimony drawn out by plaintiff that nearly all the above mentioned bonds held by individuals represent investments made by such individuals out of their surplus funds. The county assessor of Ramsey county, from whom this fact was elicited, was unable to state the character of the transactions which resulted in the promissory notes and book accounts held by individuals. Plaintiff urges that personal investments of surplus funds should not be deemed to have been made in competition with the banks, and that only a comparatively small part of promissory notes and book accounts is held by individuals. Surplus funds are moneyed capital; and the Federal courts, if we understand their decisions correctly, have repeatedly held that placing such funds at interest in the form of ordinary loans or investing them in interest-bearing securities, whether as permanent personal investments or for temporary purposes, brings them in competition with national banks within the meaning of section 5219 as it stood prior to the amendment of 1923.

Plaintiff also insists that the tax on national bank shares is no greater in fact than the tax on credits. The argument advanced in support of this claim is that individuals are taxed at the rate of 3 mills on the dollar upon the full value of their credits without deducting their liabilities; and that, if banks were taxed at the same rate upon their resources without deducting their liabilities, the amount of the tax would be approximately the same as under the present law. Probably true. But the tax is not against the bank, but against the shareholders as individuals. They are taxed as individuals upon the value of the item of property represented by their shares. They are allowed no deduction from such value on

account of their liabilities. In this particular the statute applies the same rule to them that it applies to those taxed under the money and credits act. See Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 Sup. Ct. 23, 68 L. ed. 191.

Plaintiff also contends that the tax imposed by the money and credits act does not discriminate against national banks within the meaning of the Federal act, for the reason that it was adopted for the purpose of increasing the revenue from such property and not for the purpose of favoring it as against the banks. We have no doubt that such was the purpose and that the act has resulted in a material increase of revenue from that source. It is a notorious fact, admitted everywhere, that the attempt to tax intangible personal property on the same basis as other property is, and always has been, a practical failure; that under such laws the great body of such property escapes taxation entirely, for the reason that the holders will not report it and the assessors are unable to find it.

Wisconsin recognizing that the former method of taxing personal property was a failure, sought to solve the problem of enforcing a tax against it, and also of complying with the requirements of section 5219, by taxing the shares of national banks and of all state concerns doing a business in the nature of banking on the basis of value, and by taxing all other personal property on the basis of income. The Wisconsin court, by a four to three decision rendered in April of this year, has sustained the validity of the tax imposed on the shares of national banks under this law. First Nat. Bank v. City of Hartford, 187 Wis. 290, 203 N. W. 721.

Plaintiff cites that case as authority for sustaining the tax imposed by our law, but the Wisconsin law differs so radically from the Minnesota law that the questions there presented for solution were not the same as those presented here. The Wisconsin court held, in effect, that under their law substantially all business operated in competition with national banks is required to operate under the state banking law and is subject to the same tax as the shares of national banks. As illustrative of the broad inclusive character of their banking act, the court notes that a department

store which received deposits withdrawable on demand, on which it allowed interest and against which it charged purchases made by the depositors, came within the act; and that industries which sought to promote thrift by arranging to receive deposits from employes also came within the act. The court states that its conclusion that the tax is valid does not "in any manner rest upon the argument that the income tax is an equivalent or substitute for the ad valorem tax levied upon the stock of national banking associations," and adds that in that respect it agrees with the conclusion of the New York court in People v. Goldfogle, 234 N. Y. 345, 137 N. E. 611. In the New York case the law imposed a tax of one per centum on the book value of the shares of stock in all banks and banking associations, and an income tax on all residents of the state in lieu of other taxes on their intangible personal property which term included money, credits, bonds, notes and evidences of debt. The New York court held the tax on national bank shares void on the ground that the income tax did not impose an equal burden on moneyed capital of individuals.

Several decisions of the Iowa court are called to our attention. The Iowa statute provides that the shares of national, state and savings banks and of loan and trust companies, shall be taxed at the same rate as other property on 20 per centum of their actual value; that all moneyed capital within the meaning of section 5219 of the U. S. Revised Statutes shall be taxed in the same manner and at the same rate; and that all other moneys and credits shall be taxed at the flat rate of 5 mills on the dollar of their actual value. The statute has been held valid, and the questions considered in the cases cited are mainly whether the facts in a particular case show that moneyed capital within the meaning of section 5219 is, in fact, not taxed as such but at the flat rate. The gist of these cases is that investments in real estate mortgages do not come within the meaning of that section. First Nat. Bank v. Anderson, 196 Iowa, 587, 192 N. W. 6; First Nat. Bank v. Board of Review, 199 Iowa, 1124, 201 N. W. 769; Citizens Nat. Bank v. Johnston, 199 Iowa, 460, 202 N. W. 382.

The Nebraska act of 1921 (L. 1921, c. 133), provided that tangible property should be taxed at the full rate of the levy upon its true value; that intangible property, with certain exceptions, should be taxed at one-fourth of that rate on its full value; and that the shares of banks, banking associations, loan and trust or investment companies should be taxed at the same rate as tangible property on their full value. The court held that under the rule announced in Merchants' Nat. Bank v. Richmond, supra, the statute, as applied to national banks, was clearly invalid. State Bank v. Endres, 109 Neb. 753, 192 N. W. 322; Central Nat. Bank v. Sutherland, 113 Neb. ——, 202 N. W. 428.

In Eddy v. First Nat. Bank, 275 F. 550, involving the North Dakota law then in force, the circuit court of appeals of this circuit held that taxing the shares of the bank at 35.3 mills on the dollar, while money invested in interest-bearing notes, bonds and securities was taxed at 3 mills, was a discrimination forbidden by section 5219, although the reason for taxing money and credits at the 3 mill rate was because the attempt to tax them as other property had proven a failure.

In Minnehaha Nat. Bank v. Anderson, 2 F. (2d) 897, bank shares were taxed at 34.93 mills under the South Dakota law, while money and credits were taxed at 3 mills. In an opinion in which the questions presented and the authorities bearing thereon were carefully considered, the district court of the United States held the tax against national bank shares void. In the course of the opinion it is said, in substance, that loaning money on real estate and buying notes and bonds is an important and legitimate part of the banking business; that the bank was engaged in making real estate loans and disposing of them for the accrued interest and commissions, and that parties engaged in making such loans were in competition with the bank.

In State v. Wallace, 48 N. D. 803, 187 N. W. 728, the North Dakota court construed their money and credits act then in force as applying to the stock of national banks, saying that if the legislature intended "to continue taxing such stock at the local rate of

levy, the statute would be unconstitutional as taxing the stock of national banks beyond the authority granted."

In First Nat. Bank v. Eddy (S. D.) 197 N. W. 290, the South Dakota court held that the statute taxing national bank shares at the same rate as real and personal property, while under the money and credits act other moneyed capital in the hands of individuals employed for investment, loan and discount was taxed at only 3 mills, created an unlawful discrimination within the meaning of section 5219.

It is perhaps not necessary to add that the positive limitation placed by the Federal statute on the power granted to the states puts it beyond the power of the state to impose a higher rate of taxation upon such shares than it imposes upon moneyed capital in the hands of its citizens, although it imposes a low rate on such capital for the purpose of increasing the revenue therefrom.

Defendant also insists that capital invested in real estate mortgages, aggregating many millions of dollars, must be considered as competing capital, for the reason that since the act of December 23, 1913 (38 St. 273, § 24), national banks have been authorized to invest a part of their funds in such mortgages, and the national banks of Minnesota had $19,000,000 invested therein in 1921 and $25,000,-000 in 1922. Failure to tax mortgages at the same rate as bank shares was not a forbidden discrimination prior to this act. Hepburn v. School Directors, 90 U. S. (23 Wall.) 480, 23 L. ed. 112; Adams v. Nashville, 95 U. S. 19, 24 L. ed. 369; Mercantile Nat. Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. ed. 895. Whether this act operated to change the former rule has not been passed upon by the United States Supreme Court so far as we are advised. Other decisions are conflicting. It is not necessary to determine the question here.

Defendant also insists that, although chapter 416 provides the same method for determining the value of the shares of national banks and the value of the moneyed capital of state banks, it discriminates in favor of state banks. This claim is based on the fact that in the case of state banks the tax is against the bank, not

against the shareholders, and the bank is permitted to deduct its tax-exempt securities from the value of its property in fixing the amount subject to taxation, while in the case of national banks the tax is against the shareholders, not against the bank, and tax-exempt securities are not deducted in fixing the value of such shares. We think that the method adopted is permissible under the doctrine of People v. Commissioners of Taxes, 4 Wall. (71 U. S.) 244, 18 L. ed. 344; Mercantile Nat. Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. ed. 895; and Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 Sup. Ct. 23, 68 L. ed. 191.

A few additional facts should properly be mentioned. Note brokers handle the commercial paper of manufacturers, wholesalers and jobbers in an amount exceeding $100,000,000 per year. These brokers make loans to their customers and then sell the paper to banks and other investors. The larger part of it is placed in the east. The amount sold to individuals in Minnesota or retained by the brokers themselves does not appear, but would doubtless aggregate a considerable sum. A large amount of paper known as cattle loan paper is handled in Minnesota. Three of the larger companies dealing in such paper sold over $22,000,000 of it in 1921 and 1922, of which over $13,000,000 was sold to banks, corporations, firms and individuals in Minnesota. The amount shown to have been sold to individuals in Minnesota was slightly less than $1,000,000. Eleven business concerns to whom defendant loaned money had loans from their own officers and employes aggregating nearly $1,500,000. The total amount of such loans in either Ramsey county or the state is not shown.

Several witnesses called by defendant testified that in their opinion all the capital employed for the various purposes hereinbefore mentioned, and also for several other purposes not specifically mentioned, comes into competition with the banks, and gave in detail the reasons for their conclusions. The only witness called by plaintiff testified briefly that in his opinion there would be some competition in some of the items among which he included book accounts, but that there would be little or no competition in other items as they

did not represent a class of loans or credits in which the banks were dealing.

The undisputed and unquestioned facts shown by the record convince us that moneyed capital in the hands of individual citizens, taxed at the 3 mill rate and too large in amount to be overlooked or disregarded, is employed in competition with national banks within the meaning of section 5219 as interpreted by the Supreme Court of the United States. It necessarily follows that the tax assessed against defendant is beyond the power of the state to enforce.

The act of March 4, 1923 (42 St. 1499), made several changes in section 5219. To the provision that national bank shares shall not be taxed at a greater rate than other moneyed capital in the hands of individuals, it added the following:

"Provided, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

It further provides in subdivision 4:

"The provisions of section 5219 of the Revised Statutes of the United States as heretofore in force shall not prevent the legalizing, ratifying, or confirming by the States of any tax heretofore paid, levied, or assessed upon the shares of national banks, or the collecting thereof, to the extent that such tax would be valid under said section."

Plaintiff calls our attention to McFarland v. Georgetown Nat. Bank (Ky.) 270 S. W. 995, in which the Kentucky court construed the provision last quoted as legalizing prior taxes which would be valid under section 5219 as amended by the proviso above quoted, but were invalid under that section as it stood when the tax was levied. We are unable to concur in this construction.

In Minnehaha Nat. Bank v. Anderson (D. C.) 2 F. (2d) 897, the court said:

"This amendment is not retroactive. The last provision, subdivision 4, conclusively determines that it was not intended to be retroactive. * * * Congress, however, by this amendment provided in effect, as I construe it, that the State of South Dakota might pass a curative act, subjecting complainant to the tax of 3 mills, the same as other moneys named in section 5219, Rev. Stat. U. S. The State of South Dakota was thereby given the power, without conflicting with this statute, to confirm or ratify any tax theretofore levied upon the complainant to the extent of 3 mills, the amount that would be valid under the construction given section 5219, as theretofore in force."

We think the Federal judge points out the purpose of this provision, and that it authorizes the state to provide for the collection of an invalid tax theretofore levied to the extent that such tax would be valid under section 5219 as that section existed at the time it was levied.

The order appealed from is reversed.

STONE, J., took no part.

On October 16, 1925, the following opinion was filed:

PER CURIAM.

This is an appeal by the plaintiff from a judgment of Ramsey county district court entered in favor of defendant and against plaintiff in an action brought by the plaintiff to recover alleged delinquent personal property tax for the year 1921 and for the year 1922. The questions presented are those decided by this court on an appeal by the defendant from an order denying a new trial, which decision of this court immediately precedes this opinion. Upon authority of the decision last referred to the judgment in this action is affirmed.

Judgment affirmed.