FIRST NAT. BANK OF CHICAGO v. FARWELL, Collector, etc.

*(Circuit Court, D. Illinois. May 24, 1881.)*

1. NATIONAL BANKS—TAXATION OF SHARES—INVESTMENT IN GOVERNMENT BONDS.

In the taxation of the shares of a national bank, the shareholders are not entitled to any allowance for such of the capital and surplus of the bank as may be invested in government bonds.

2. SAME—TAXATION OF SHARES—ASSESSMENT.

In the taxation of the shares of a national bank, it must appear that the assessors acted under some agreement or rule which necessarily tended to tax such shares at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, in order to render their assessment void under section 5219 of the Revised Statutes.—[ED.

In Equity.

*Hitchcock, Dupree & Judah,* for complainant.

*Francis Adams,* for defendant.

DRUMMOND, C. J. The act of congress creating national banks declares that the taxation by the different states of the shares of stock in national ·banking associations shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such states. This is a bill filed by the plaintiff to restrain, by injunction, the collection of a tax by the defendant, for the reason, as alleged, that this provision of the statute has been violated by the assessment of the shares of stock of the .plaintiff in this case. It is stated in the bill that no allowance was made by the assessors for the amount of capital and surplus invested in government bonds. This is answered, showing that such allowance need not be made, by the case of *Allen* v. *Assessors,* 3 Wall. 573, and the case of *People* v. *Commissioners,* 4 Wall. 244. The bill alleges several cases in which a discrimination is claimed to have been made against the shares of stock of the plaintiff, as that the shares of stock of other banking associations have been assessed at less value. But it is not sufficient that other capital may in fact have been assessed differently from that of the plaintiff. In mak-

ing assessments it cannot be expected that the estimates of value placed by the assessors upon the property of individuals, or of corporations, should always be the same, and the fact that there may have been differences in this respect will not authorize a party to come into a court of equity and ask for an injunction to restrain the collection of taxes. It is also alleged in the bill what was the amount of the capital stock of the plaintiff, and of its surplus, and what was the aggregate fair cash value of its shares of stock on the first of May, 1880, and what was the assessment on such value against the plaintiff according to the mode of valuation adopted by the assessor; and the bill then declares what was the capital of certain other banks, naming them, and that the assessment upon those banks was not at the same rate as that made against the plaintiff. But there is no allegation what returns were made by those banks to the assessors, nor is there any statement that the assessors knew what was the value of the stock of those banks. So that it is quite possible the valuation named in the bill by the assessor may have been the result of mistake or misapprehension, or of misinformation.

The rule which seems to be established by the supreme court of the United States in cases of this sort is this: that it must appear in the act of the legislature it was the intention of the statute to tax the shares of the capital stock of the national banks at a higher rate than other moneyed capital in the hands of individuals, or there must be some agreement or combination or rule established by the assessors, the necessary effect of which is to produce the same result. It may be admitted that it is difficult, under this rule, for a party to come into a federal court of equity and obtain an injunction against the collection of a tax. The inclination of the supreme court seems to be to discourage applications of this kind, as interfering with the collection of funds which are necessary to carry on the government of the state.

In the case of *The German National Bank of Chicago* v. *Kimball*, recently decided in the supreme court of the United States and not yet reported, it appears to be implied that

there must be a distinct averment in the bill that the shares of stock of a national bank are valued higher for the purposes of taxation than other moneyed capital generally, and that it is not enough to allege that such may be the fact in a particular instance; that the mere allegations that the assessments are partial, unequal, and even unjust, are not sufficient. It is, perhaps, inferable from the opinion in that case that the supreme court will not go further than it has already gone in the case of *The People* v. *Weaver*, 100 U. S. 539; in *Pelton* v. *National Bank*, 101 U. S. 143; and in *Cummings* v. *National Bank*, 101 U. S. 153.

In this case there appears to have been no agreement or concert of action among the assessors by which a general rule or discriminating rate has been adopted either by the assessors generally, or by any single assessor, the necessary effect of which is to tax the shares of stock of the First National Bank of Chicago at a higher rate than other moneyed capital in the hands of individuals, and therefore the motion which has been made for an injunction will be overruled.

NOTE. Section 5219 of the Revised Statutes has recently been construed in *Bank* v. *Hills*, 5 FED. REP. 248; in *Bank* v. *Maher*, 6 FED. REP. 417; in *Youngstown* v. *Hughes*, Id. 737; and in *Bank* v. *Waters*, *ante*, 152.—[ED.