J. S. ROBERTS, AS TAX COLLECTOR OF ESCAMBIA COUNTY, FLORIDA, *Appellant*, v. AMERICAN NATIONAL BANK OF PENSACOLA, *Appellee.*

En Banc.

Opinion Filed August 1, 1927.

428

*J. B. Johnson,* Attorney General, and H. E. Carter, Assistant, for Appellant;

*Watson & Pasco & Browne,* for Appellee.

LOVE, Circuit Judge.—This suit was brought by the appellee, a banking association organized under the National Banking Law of the United States, to enjoin the appellant, the Tax Collector of Escambia County, from collecting a tax levied upon the shares of its stockholders, for the year 1925, payment of which was demanded of the complainant as agent of the holders of such shares. The bill assails the validity of such tax upon three grounds, alleging:

1. That such tax is discriminatory in that other moneyed capital coming in direct competition with complainant and subject to taxation under the laws of Florida, was not taxed at all for the year 1925, while State and County taxes were levied against the shares of the capital stock of complainant.

2. That under the Constitution of the State of Florida, as amended in 1924, shares of the capital stock of National Banks are not taxable at a higher rate than five mills on the dollar.

3. That because a large amount of property of like character to that of shares of capital stock of National

Banks, and subject to taxation, has not been assessed for taxation in Escambia County, the assessment against the shares of the capital stock of complainant is so arbitrary and discriminating as to amount to fraud and to render such tax invalid and void.

The defendant filed a demurrer, attacking the bill as a whole and also the several grounds for relief alleged in the bill. Upon a hearing of the demurrer and the application of complainant for a temporary injunction, an order was entered whereby the demurrer was overruled and a temporary injunction granted, from which order this appeal was taken.

1. After alleging the payment by complainant of the tax on real estate, assessed against it, the bill charges that the tax assessed against the stock of complainant corporation in the hands of its stockholders is invalid and void because of illegal discrimination, and to establish this claim, alleges that after deducting the assessed value of its real estate, the aggregate assessed valuation of its capital stock for the year 1925 on the tax rolls of Escambia County, was Two Hundred Thirty Two Thousand Dollars ($232,000.00), which is alleged to be only fifty per cent of its actual value, and the aggregate amount of the tax assessed against all of its stockholders for State and County purposes, was Thirteen Thousand, Two Hundred Twenty Dollars ($13,220.00). That the entire property of complainant, other than its real estate and fixtures for said year 1925, consisted of moneys, deposits in banks, notes, mortgages and similar securities, that on January 1st, 1925, and during said year there were in addition to all banks doing business in said county, twenty companies licensed to lend money and actually engaged in the business of lending money; that said companies had an aggregate capital of more than Two Hundred Thousand Dol-

lars ($200,000.00), all used in the business aforesaid and in said county at said time and that said companies were on January 1st, 1925, and during said year, actually engaged in the lending of money on real estate, mortgages, notes, retention of title contracts and similar securities; that the complainant as a part of its banking business, was then and there lending money on securities identical in character with that enumerated and the capital invested in said other companies then and there came in direct competition with the complainant in its business as a National Bank and was substantial in amount ————. That companies and individuals in *Escambia County,* at the time aforesaid, had invested in the business of *lending money on securities,* in direct competition with the complainant and other banking companies in the banking business more than half a million dollars. That ''The capital stock of said twenty other companies was not assessed or taxed at all for said year, nor were any of the loans, credits or moneys of said companies or any of them assessed, but to the contrary all of said companies and all of the individuals and companies engaged in the business as aforesaid, were exempt from all taxation other than license tax, on the capital stock and on all loans, mortgages, notes, moneys, deposits and evidences of indebtedness,'' and that if the tax on the shares of the capital stock of complainant should be enforced, and if the other companies and individuals competing with complainant and their property are exempt from taxation, the result would be an unjust and illegal discrimination against the shareholders of complainant corporation, in that the taxation imposed upon the shares of the capital stock of said corporation would be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the State.

Appellant contends that because in its original bill ap-

pellee specially pleaded the provisions of Section 5219 of the Revised Statutes of the United States and in its amended bill omitted special reference to this provision and failed to specifically charge that the alleged defaults of the said Tax Collector were in violation of such provision, it has abandoned such benefits that might have been conferred by it and cannot invoke its provisions at this time.

The Federal Statute is as follows: "In the case of a tax on said shares, the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks; Provided that bonds, notes, or other evidences of indebtedness in the hands of individual citizens, not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

Appellee being a National Bank, is an agency of the United States, created under its laws to promote its fiscal policies and hence such bank, its property and its shares cannot be taxed under State authority except as Congress consents and then only in conformity with the restrictions attached to its consent, and the construction given to that statute by the Federal courts is binding upon the state courts. By the provisions of said Federal Statute, Congress consented to the taxation of the shares of national banks to their owners, under the laws of the State where such bank might be located, subject to the restrictions that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." First National Bank v. Anderson, 269 U. S. 341, 70 L. Ed. 295; State v. First

National Bank of St. Paul, 164 Minn. 235, 204 N. W. Rep. 874, affirmed by United States Supreme Court in 47 Supreme Court Rep. 468, March 21, 1927.

As the State derives its right to tax such shares from this statute and is dependent entirely upon it for its power and authority to impose such tax, it follows that disputed questions with reference to the liability of the shares of a national bank ordinarily arise under this statute, and when appropriate allegations of facts under the rules of good pleading distinctly and definitely make it appear that the dispute is one really and substantially involving some right claimed under such stated section, such allegations are sufficient to enable the pleader to avail himself of the provisions of such statute, in the determination of his case, without specially pleading the particular Act or referring to its provisions. 25 C. J. 776, 777, 941.

The allegations of the amended bill being sufficient in this respect and its provisions being invoked in this case, to becomes necessary to consider the application of such statute to the facts stated in such amended bill and its effect thereon.

Under the allegations of this particular division of the bill, large amounts of capital are invested in businesses in Escambia County which are of the same character as some though not all of the business carried on by national banks, such as lending money on various kinds of securities; that such capital is in substantial competition with that of national bands and that such capital was not assessed for taxation for the year 1925. Such condition is not alleged in the bill to result from any statutory discrimination against capital invested in national banks as in First National Bank v. Anderson, 269 U. S. 341, 70 L. Ed. 295, 46 Sup. Ct. Rep. 135; Merchants National Bank of Richmond v. City of Richmond, 256 U. S. 635, 41 Sup. Ct. Rep. 619;

State of Minnesota v. First National Bank of St. Paul, 273 U. S. 561, 47 Sup. Ct. Rep. 468, affirming State v. First National Bank of St. Paul, 164 Minn, 235, 204 N. W. Rep. 874; First National Bank of Hartford v. City of Hartford, 273 U. S. 548, 47 Sup. Ct. Rep. 462, reversing First National Bank of Hartford v. City of Hartford, 187 Wis. 290, 203 N. W. Rep. 721; McFarland, Sheriff, v. Georgetown Nat. Bank, 208 Ky. 7, 270 S. W. Rep. 995, affirmed on the evidence in Georgetown Nat. Bank v. McFarland, Sheriff, 273 U. S. 568, 47 Sup. Ct. Rep. 467, decided March 21, 1927; but, as it is charged in the bill, arises solely from the failure of the tax assessor of Escambia County to assess moneyed capital in the hands of individual citizens coming into competition with national bands in the loan market.

Where equity may properly be invoked to restrain the collection of state taxes on the ground of the invalidity of the assessment, the complainant must make a complete case for equitable relief by excluding every reasonable hypothesis of a legal assessment against him. See 3 Cooley on Taxation (4th Ed.) Sec. 1000; Amoskeeg Sav. Bank of Manchester N. H., People of the State of New York ex rel. v. Purdy, 231 U. S. 373, 34 Sup. Ct. Rep. 114; Aberdeen Bank v. County of Chehalis, 166 U. S. 440, 17 Sup. Ct. Rep. 629.

An unequal tax assessment cannot be held in violation of the equal protection clause of the Fourteenth Amendment, where a purpose of the assessing board to discriminate is not clearly established and where the discrimination may be attributed to an honest mistake of judgment. The good faith of tax assessors and the validity of their acts are presumed, and when assailed the burden of proof is upon the complaining party. Sunday Lake Iron Co. v. Township of

Wakefield, 247 U. S. 350, 38 Sup. Ct. Rep. 495; City of Tampa v. Palmer, 91 Fla. 368; 105 Sou. Rep. 115.

The rule established by the Supreme Court of the United States in cases where discrimination against taxation of the shares of National Banks, alleged to have resulted from the actions of tax assessors, is relied upon to avoid a tax on such property, is that it must be made to appear ''that the assessors habitually and intentionally or by some rule prescribed by themselves or by someone whom they were bound to obey, assessed the shares of a national bank higher in proportion to their actual value than other moneyed capital generally.'' Supervisors v. Stanley, 105 U. S. 316, 26 L. Ed. 1120; Stanley v. Board of Supervisors, 121 U. S. 535, 30 L. Ed. 1000; First National Bank of Chicago v. Carwell, 7 Fed. 518.

In the case of German National Bank v. Kimball, 103 U. S. 732, 26 L. Ed. 469, a bill was brought to enjoin the payment of a tax assessed against the shareholders of a national bank on their shares of the bank stock. In substance the bill alleged that complainant bank shares were assessed at fifty percent of their value, but that other moneyed capital was assessed at an even less rate than this and that therefore the asessment violated the provisions of Sec. 5219, U. S. Rev. Stats., and for this reason no tax should be paid on such bank shares. The bill was dismissed on demurrer. Referring to the cases of People v. Weaver, 100 U. S. 539, 25 L. Ed. 705; Pelton v. Bank, 101 U. S. 143, 25 L. Ed. 901, and Cummings v. Bank, 101 U. S. 153, 25 L. Ed. 903, which cases were cited by appellee in this case, the court said: ''It is held in these cases that when the inequality of valuation is the result of a statute of a State, designed to discriminate injuriously against any class of persons or any species of property, a court of equity will give appropriate relief; and also where, though the law itself is unobjectionable, the officers who are appointed to make

assessments combine together and establish a rule or principle of valuation, the necessary result of which is to tax one species of property higher than others and higher than the average rate, the court will also give relief. But the bill before us alleges no such agreement of common action of assessors and no general rule or discriminating rate adopted by a single assessor, but relies on the numerous instances of partial and unequal valuations which establish no rule on the subject.''

The allegations of the bill as to this phase of the case, failing as it does to allege any intentional omission or discrimination on the part of the tax assessor, may not measure up to the rule stated above.

Another ground of attack on the tax as made by the bill is closely related to that above considered, but is based upon the principle that equity will give appropriate relief against illegality or intentional or systematic unjust discrimination in imposing the burden of necessary taxation. As grounds for relief under this division of the bill and not connected with the first ground already discussed, complainant alleges that ''large amounts of moneys, mortgages, bonds, deposits in bank, notes and other securities, aggregating many millions of dollars are and were on January 1st, 1925, and during said year, owned and held by persons, corporations and individuals other than banks, residing in Escambia County, Florida, and subject to taxation in said county, but no taxes for state and county purposes are assessed on said property although the laws of the State of Florida expressly require said property to be assessed for said purposes and taxes to be collected therefrom; that as heretofore alleged, the capital stock of complainant, the entire value of which other than real estate as aforesaid, is and was on January 1, 1925, made up of deposits of money, notes, bonds and similar securities, is assessed against com-

plainant as agent or representative of its stockholders, at a valuation of approximately $230,000.00, the total tax for said purposes assessed and levied thereon (other than the tax on its real estate) aggregating over $13,000.00; that the tax assessor and other taxing authorities of said county knew, or ought to have known of the existence of the property aforesaid subject to taxation; that published banking statements of the banks in the City of Pensacola and Escambia County, Florida, showed that there were approximately eight million dollars on deposit on the first of January, 1925, and during said year; that the public official records of mortgages of said county show that there were more than one million dollars of mortgages in existence on January 1, 1925, and during said year; that there are corporations doing business and domiciled in Escambia County, Florida, with capital stock aggregating many millions of dollars as shown by the records of corporations in the office of the Clerk of the Circuit Court of said County; that no taxes are levied or assessed for the year 1925 on any of the capital stock of any of said corporations or on any of the moneys, mortgages, bonds, deposits in banks, notes, and other securities except the tax on the capital stock of banking institution levied as aforesaid; that the laws of the State of Florida require and did require on the first of January, 1925, and during said year, that all of said property aforesaid be assessed at a like valuation and at a like rate as the assesssment on the capital stock of banking institutions, but the assessor and other taxing authorities in said county have deliberately, and with knowledge as aforesaid of the facts aforesaid assessed the bank stock of the complainant at the full rate of taxation and at a valuation alike in basis and amount with real and personal property, but have made no assessment or levy on the capital stock of any corporations or on any of the classes of prop-

erty above set forth. The complainant alleges that this practice constitutes a fraud on the complainant and renders the tax levied and assessed as aforesaid invalid and void.

Section 694, Revised General Statutes of Florida, provides that, "All real and personal property in this State and all personal property belonging to persons residing in this State, not hereby expressly exempted therefrom, shall be subject to taxation in the manner provided by law."

Section 696 provides that, "The terms personal property and personal estate as used in this chapter, shall have the same meaning and shall, for the purpose of taxation, be construed to include all goods and chattels, moneys and effects, all boats and vessels, all debts due or to become due from solvent debtors, whether on account, contract, note or otherwise, all public stocks or shares in all incorporated or unincorporated companies."

Sections 716 and 717 provide that all personal estate liable to taxation shall be assessed at its true cash value, estimated by the County Assessor.

These statutes, if duly executed and administered, would accomplish in effect the equitable and just result of so apportioning the proper burden of taxation that each person enjoying the benefits and protection of organized government should be required to contribute so much as is his reasonable proportion and no more. Such should be the ideal to be attained, but approximation to it is all that can be had. Under any system of taxation devised by the wisdom, care and ingenuity of man an unequal and disproportionate share of the public burdens will fall upon certain kinds of property because they are visible and tangible, while other forms of property evade discovery by even the most active and vigilant tax officers. However, it is the requirement of the statutes of this State that all property, real and personal, in the State and all personal property

belonging to persons residing in the State, not expressly exempted, shall be subjected to taxation. No public official has the right to intentionally or willfully suspend or disregard this law, or deliberately and purposely omit from the assesssment rolls property which they know is liable to taxation, whatever motive may animate them, for by so doing an added burden is placed upon property on the assessment rolls, contrary to justice and indefensible in principle and law.

The bill charges that ''large amounts of mortgages, bonds, deposits in banks, notes and other securities aggregating many millions of dollars, are and were on January 1, 1925, and during said year, owned and held by persons, corporations and individuals, other than banks, residing in Escambia County and subject to taxation in said county, were omitted from the tax rolls and were not assessed for taxation for the year 1925.'' Substantially the same charges are made relative to the capital stock of corporations in said County having many millions of dollars capital and then charges, ''that the tax assessor and other taxing authorities in said County have deliberately and with knowledge as aforesaid of the facts aforesaid assessed the bank stock of the complainant at the full rate of taxation and at a valuation alike in basis and amount with real and personal property, but have made no assessment or levy on the capital stock of any corporation or on any of the classes of property above set forth.''

This practice complainant alleges constitutes a fraud and renders the tax levied and assessed on the shares of its capital stock invalid and void.

If the property omitted was subject to taxation, which it is alleged it was and which allegation was held ''a most material one'' in City of Tampa v. Palmer, 91 Fla. 368, 105 So. 115, aggregating millions of dollars in value, and

if the tax assessor knew of such facts and knowing them deliberately failed to place such property on the assessment roll, then such action was intentional, was without sanction of law, and constituted an abuse of discretion so arbitrary and discriminating against those whose property was assessed as to impose upon their property such a disproportionate share of the public burden as to entitle them to relief in a court of equity, and to bring this case well within the principle stated in City of Tampa v. Kaunitz, 39 Fla. 683, 23 So. 416, text 421, wherein this Court said: ''We think tax officers, like all others, are required to exercise good faith in performing their official duties. They should not use their official position or official discretion as a cover for fraudulent conduct in unequally and inequitably adjusting the burdens of taxation. For it is a salutary principle of law, which runs through all its branches, that fraud vitiates and annuls everything which it touches. If, therefore, tax officers intentionally commit an illegal act, with a fraudulent purpose in view, as where taxable property is intentionally omitted for an improper purpose, we have no doubt that the entire assessment is illegal and void. If, however, the omission to assess taxable property arises in consequence of a *bona fide* belief on the part of the taxing officers that the omitted property is exempt from taxation, or results from inadvertance or negligence, without any intent on their part to impose additional or unequal burdens upon other taxpayers, the assessment will not be held to be void.'' See also City of Tampa v. Palmer, 91 Fla. 368, 105 Sou. Rep. 115.

Though the bill in the case under consideration does not allege *ipsissimis verbis*, that the property alleged was omitted from the assessment rolls in bad faith or from any actual fraudulent purpose, yet it does charge that the property so omitted was known to the tax assessor and that he

deliberately failed to assess same for taxation. The truth of these facts alleged as well as the conclusions necessarily resulting from the facts stated, are admitted by the demurrer, and constitutes a violation of or omission to follow the mandatory requirements of the law that all such property should be assessed for taxation, a situation clearly distinguishable from an irregularity, a mere mistaken exercise of judgment or accidental omission. Such omission as charged here, constitutes "an assessment wherein, independent of the exercise of a discretion as to value, there appears prejudicial and material error in matters of law" and constitutes grounds for equitable interference. City of Tampa v. Palmer, *supra*.

If tax assessors can deliberately disregard the law and knowingly omit from the assessment rolls property subject to taxation and substantial in value, and the taxpayer whose tax has thereby been increased can have no relief but must pay the same, there would seem to be little value in law regulating the assessment, levying and collection of taxes. "It might as well be left to the discretion, or caprice of the officers to impose the burden of taxes as they might think proper." Hersey v. Board of Supervisors, 16 Wis. 185, 82 Am. Dec. 713.

The allegations of this part of the bill are sufficient to support proof of an intentional and deliberate failure of the tax assessor to observe and comply with the mandatory requirements of the law designed to guard against unjust discriminatory taxation and the imposition of a disproportionate share of the public burden on those whose property may have been assessed for taxation and, therefore, are sufficient to sustain the action of the judge of the circuit court in granting the temporary restraining order from which this appeal is taken.

Affirmed.

ELLIS, C. J., AND WHITFIELD, STRUM AND BROWN, J. J., concur.

BUFORD, J., disqualified.

TERRELL, J., not participating.

STRUM, J. (Concurring):

I concur in what is said in the foregoing opinion prepared by Judge Love; and I am also of the opinion that the bill of complaint is sound in both its aspects, that is, first, it makes a case for relief under the Federal Statute, Sec. 5219, U. S. Rev. St., upon the theory of an unlawful discrimination in taxation against the shares of National banks; and, second, that it sufficiently alleges an unlawful discrimination contrary to the principles of equality and uniformity in taxation established by the Constitution and statutes of Florida.

ELLIS, C. J., AND WHITFIELD, J., concur.

WHITFIELD, J. (concurring):

"National Banks are not merely private moneyed institutions but agencies of the United States created under its laws to promote its fiscal policies; and hence the banks, their property and their shares cannot be taxed under state authority except as Congress consents and then only in conformity with the restrictions attached to its consent. *Des Moines National Bank v. Fairweather,* 263 U. S. 103, 106, and cases cited. The early legislation respecting these banks contained a restricted consent, which afterwards became Sec. 5219 of the Revised Statutes. By it Congress assented to the taxation of the shares to their owners un-

der the laws of the state where the bank was located, subject to the restriction that 'the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state,' and further assented to the taxation of the real property of the bank for state, county, and municipal purposes 'to the extent, according to its value, as other real property is taxed.' This consent thus restricted was in force when the tax here assailed was levied.

"The restriction on the taxation of the shares often has been considered by this Court. The earlier decisions have been reviewed from time to time in later cases, and all, taken collectively, may be summarized as showing, so far as is material here,

"1. The purpose of the restriction is to render it impossible for any state, in taking the shares, to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking. *Mercantile National Bank v. New York,* 121 U. S. 138, 155; *Des Moines National Bank v. Fairweather, supra,* 116.

"2. The term 'other moneyed capital' in the restriction is not intended to include all moneyed capital not invested in national bank shares, but only that which is employed in such way as to bring it into substantial competition with the business of national banks. *Mercantile National Bank v. New York, supra,* 157; *Aberdeen Bank v Chehalis County,* 166 U. S. 440, 461.

"3. Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking; and also where it is employed, substantially as in the loan and investment features of banking, in mak-

ing investments, by way of loan, discount or otherwise in notes, bonds or other securities with a view to sale or repayment and reinvestment. *Mercantile National Bank v. New York, supra,* 155-157; *Palmer v. McMahon,* 133 U. S. 660, 667-668; *Talbot v. Silver Bow County,* 139 U. S. 438-447.

"'4. The restriction is not intended to exact mathematical equality in the taxing of national bank shares and such other moneyed capital, nor to do more than require such practical equality as is reasonably attainable in view of the differing situations of such properties. But every clear discrimination against national bank shares and in favor of a relatively material part of other moneyed capital employed in substantial competition with national banks is a violation of both the letter and spirit of the restriction. *People v. Weaver,* 100 U. S. 539; *Boyer v. Boyer,* 113 U. S. 689, 701; *National Bank of Wellington v. Chapman,* 173 U. S. 205, 216.'' First National Bank of Guthrie Center v. Anderson, County Auditor, 269 U. S. 341, text 347-8, 46 Sup. Ct. Rep. 135.

The Federal Statute is as follows: ''In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state *coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section.''*

The Italicized words constitute an amendment by the Act of 1923. Such amendment does not change the meaning of the Act as previously interpreted. First National

Bank of Guthrie Center v. Anderson, County Auditor, 269 U. S. 341, text 350, 46 Sup. Ct. Rep. 135.

Where equity may properly be invoked to restrain the collection of state taxes on the ground of invalidity of the assessment, the complainant must make a complete case for equitable relief by excluding every reasonable hypothesis of a legal assessment against him. See 3 Cooley on Taxation (4th ed.), Sec. 1000; Amoskeag Sav. Bank of Manchester, N. H., People of State of New York *ex rel.* v. Purdy, 231 U. S. 373, 34 Sup. Ct. Rep. 114; Aberdeen Bank v. County of Chehalis, 166 U. S. 440, 17 Sup. Ct. Rep. 629.

An unequal tax assessment cannot be held in violation of the equal protection clause of the Fourteenth Amendment, where a purpose of the assessing board to discriminate is not clearly established and where the discrimination may be attributed to an honest mistake of judgment.

The good faith of tax assessors and the validity of their acts are presumed; when assailed the burden of proof is upon the complaining party. Sunday Lake Iron Co. v. Township of Wakefield, 247 U. S. 350, 38 Sup. Ct. Rep. 495.

Unjust discrimination through intentional, systematic undervaluation by state officials of other taxable property of the same class when plaintiff's property is assessed and taxed much higher, is ground for an injunction, preventing the taxation of his property at a higher rate than the property so favored. It is not enough, however, that taxing officials have made a mistake, or that the court, were its judgment properly invoked, might reach a different conclusion as to the taxes; there must be a clear, affirmative showing that the difference is an intentional discrimination adopted as a practice. Chicago, R. I. & P. R. Co. v. Kendall, 266 U. S. 94, 45 Sup. Ct. Rep. 55.

The shares of national banks can be taxed by the states

only in the manner and to the extent authorized by Section 5219, U. S. Rev. St. (U. S. Comp. St. No. 9784), and the construction given to that statute by the Federal courts is binding on the state courts. Under that statute such shares cannot be taxed at a greater rate than moneyed capital in the hands of individual citizens employed in competition with such banks. State v. First Nat. Bank of St. Paul, 164 Minn. 235, 204 N. W. Rep. 874, affirmed by U. S. Supreme Court in 273 U. S. 468, 47 Sup. Ct. Rep. 468, March 21st, 1927.

The State Constitution and statutes specify what classes of property shall be *exempt* from taxation, and the classes of property referred to in the bill of complaint are not *exempt* from taxation under the law. See Sec. 1, Art. IX Constitution; Sec. 697 Rev. Gen. Stats. 1920.

The allegation in the bill of complaint that the capital stock and other personal property of the complainant's competitors in business were not assessed or taxed, but "were exempt from all taxation," must have reference to a failure of the tax assessor to assess as required by the statute, and not to "exemption" from taxation, since the statute requires taxes to be paid on "all taxable personal property" "to include all goods and chattels, moneys and effects, all boats and vessels, all debts due or to become due from solvent debtors, whether on account, contract, note or otherwise, all public stocks or shares in all incorporated or unincorporated companies." The rate of taxation is the same on all property that is assessed. The State statute is not invalid as in First National Bank of Guthrie Center v. Anderson, County Auditor, 269 U. S. 341, 46 Sup. Ct. Rep. 135; Merchants' Nat. Bank of Richmond, Va. v. City of Richmond, 256 U. S. 635, 41 Sup. Ct. Rep. 619; State of Minnesota v. First Nat. Bank of St. Paul, 273 U. S. 561, 47 Sup. Ct. Rep. 468, affirming State v.

First Nat. Bank of St. Paul, 164 Minn. 235, 204 N. W. Rep. 874; First Nat. Bank of Hartford, Wis. v. City of Hartford, 273 U. S. 548, 47 Sup. Ct. Rep. 462, reversing First Nat. Bank of Hartford v. City of Hartford, 187 Wis. 290, 203 N. W. Rep. 721; McFarland, Sheriff v. Georgetown Nat. Bank, 208 Ky. 7, 270 S. W. Rep. 995, affirmed on the evidence in Georgetown Nat. Bank v. McFarland, Sheriff, 273 U. S. 568, 47 Sup. Ct. Rep. 467, March 21, 1927.

Even if the allegations of the bill of complaint may be considered insufficient to show an intentional, unjust discrimination by the assessing officer in making assessments that would violate the due process and equal protection provisions of controlling organic law (Sunday Lake Iron Co. v. Wakefield Tp., *supra;* City of Tampa v. Palmer, 89 Fla. 514, 105 South. Rep. 115), yet the allegations may be regarded as a sufficient basis for adducing proof that in violation of Section 5219 U. S. Revised Statutes "the tax imposed" on complainant's shares is "at a greater rate than is assessed upon other moneyed capital employed in the investment business and coming into competition with the business of national banks," by showing that such competing capital is so employed and is not assessed at all, while complainant's "shares" are assessed, 47 Sup. Ct. 462. See contra, Aberdeen Bank v. County of Chehalis, 166 U. S. 440, 17 Sup. Ct. Rep. 629.